MATTER OF KATIGBAK

In Visa Petition Proceedings

A–17918512

*Decided by Regional Commissioner October 13, 1971*

To be eligible for preference classification under section 203(a)(3) of the Immigration and Nationality Act, as amended, the beneficiary must be a qualified member of the professions at the time of the filing of the visa petition. Education or experience acquired subsequent to the filing date of such visa petition may not be considered in support thereof since to do so would result in according the beneficiary a priority date for visa issuance at a time when not qualified for the preference status sought.

ON BEHALF OF APPLICANT:    Earl R. Steen, Esquire
840North Broadway
Los Angeles, California 90012

This case is before the Regional Commissioner as an appeal from the District Director's decision of January 29, 1971 wherein he denied the applicant's petition for preference classification as an accountant under section 203(a)(3) of the Immigration and Nationality Act, as amended, as not being academically qualified. No appeal was taken from the District Director's denial. On February 3, 1971 counsel for applicant submitted a motion to the District Drector to reopen and reconsider his denial decision. On February 16, 1971, the District Director denied that motion. On August 23, 1971, counsel filed a petition for review in the United States District Court, Central District of California, and on September 9, 1971 the court dismissed the action, upon stipulation of the parties, to allow the petitioner to apppeal from the District Director's denial decision of January 29, 1971 if such appeal was actually filed within 15 days of the court's order. Appeal was received by the District Director, Los Angeles, within the time set and that appeal will be honored.

Oral argument in support of appeal was requested and granted. Counsel appeared as scheduled.

The applicant is a 23-year-old single female, a native and citizen of the Philippines. She was admitted to the United States as a

visitor at San Francisco on December 2, 1967 to June 30, 1968 and was granted a change of status to student at Los Angeles on September 11, 1968 with extensions of stay in student status to June 25, 1971 to attend Woodbury College in Los Angeles. Counsel has advised that the applicant attended Woodbury College until March 1970. She last applied for extension of stay in student status on June 25, 1970, indicating that it was her intention to continue study at Woodbury College. The application for extension of stay was granted with authority to remain until June 25, 1971. The applicant, however, did not again enroll at Woodbury during the period of her last extension.

The record shows that she accepted unauthorized employment on September 29, 1970, during the period of her last extension in student status, and on December 6, 1970 filed the instant petition for classification under section 203(a)(3) of the Act as a member of the professions as an accountant to seek work as such with a firm of certified public accountants in Beverly Hills, California.

By the filing of the petition, the applicant asserts that she is a member of the professions as an accountant and qualified as such by reason of her bachelor of science degree in business administration from a university in the Philippines, and a major in accounting achieved at Woodbury College and experience as a junior accountant since September 29, 1970 with the certified public accounting firm. The approval of the petition would give her a visa availability priority date as of the date of filing the petition, *i.e.,* December 6, 1970. Petitions filed prior to February 4, 1971 for the profession of accounting were covered by the blanket Labor certification provided by 29 CFR 60, Schedule A, Group II.

The occupation of accountant is recognized as being within the professions. The issue in this case is to determine if the applicant was academically qualified as a member of the professions as an accountant at the time the petition was filed and eligible for the preference sought.

The *Matter of Asuncion,* 11 I. & N. Dec. 660 (modified by the *Matter of Panganiban,* 13 I. & N. Dec. 581), holds that a characteristic common to occupations in the professions is the minimum of a baccalaureate degree, while the *Matter of Shin,* 11 I. & N. Dec. 686, points out that the acquisition of a degree does not, *per se,* make the holder thereof a member of the professions.

The degree or major must be academically appropriate to the profession for which petitioned. A baccalaureate degree in accounting or an academic major in accounting will satisfy the academic qualification requirements for the profession of accounting. The Service has consistently held that 24 semester units in accounting satisfy the requirements for an academic major.

Colleges and universities generally require at least a minimum of 24 units in a specific field to attain a major in that field.

The *Occupational Outlook Handbook*, published by the Department of Labor, (editions 1966–67, page 29, 1968–69, page 32, and 1970–71, page 28) all state "for beginning accounting positions the Federal Government requires four years of college training, including 24 semester hours in accounting or an equivalent combination of education and experience." Counsel's statement that the *Occupational Outlook Handbook*, page 24, shows that from 20 to 24 units in accounting are required for Federal employment as an accountant is not factual.

Counsel has also offered a statement of qualifications for the position of accountant-auditor, for the County of Los Angeles, which requires graduation from an accredited course with 24 semester units of accounting, including a course in auditing and if such auditing course has not been taken it may be completed during the first year of employment. This argument has little merit. The Service is not guided or controlled by local county position requirements.

In support of the petition the applicant presented evidence of graduation from a university in the Philippines on May 7, 1967 with a baccalaureate degree in business administration. Review of the transcript of credits from this university, which uses the semester unit system, shows that she completed two courses in the field of accounting for a total of six semester units and a three-hour course titled "management accounting" in the field of business administration. Although this last course is shown to be in the field of business administration, we will, because of its course title, consider it as applicable to the field of accounting, thereby giving the applicant credit for nine semester units in accounting earned at the Philippine university.

The applicant also presented a transcript of credits from Woodbury College relating to her matriculation at this school for the winter quarter of the 1968–69 school year through the winter quarter of the 1969–70 school year. Woodbury College is on the quarter system rather than the semester unit system. The evaluation branch of the University of California has advised the service that the quarter units earned at a school using the quarter system are evaluated at two-thirds a semester unit. Review of the transcript of credits from Woodbury shows that she had enrolled in five accounting courses at Woodbury, each of the courses being four-quarter-unit courses. However, one of the courses is shown as "I" or incomplete, for which she earned no credit. The four four-quarter-unit courses she did complete earned her a total of 16 quarter units. Two-thirds of 16 quarter units gives her the equiva-

lent of 10 ⅔ semester units earned at Woodbury. The nine semester units earned at the Philippine university, added to the 10 ⅔ semester units earned at Woodbury, give her a total of 19 ⅔ semester units. This is short of the required semester units. The applicant's statement as contained in her Form ES 575, "Statement of Qualifications of Alien", executed December 4, 1970, accompanying her petition, that she received an "accounting major" from Woodbury College in 1970, is not supported by the evidence. School officials at Woodbury College have advised that 57 quarter units in accounting are required at that school for a major in that field. This is the equivalent of 38 semester units. Applicant did not achieve a major in accounting at Woodbury.

At the time the petition was originally filed on December 6, 1970 it was accompanied by a letter dated November 23, 1970 from a member of the certified public accounting firm employing the applicant which states: "This is to certify that Fe Corozon Katigbak has been employed with us since September 29, 1970. We consider her to be a full-time, permanent employee. A portion of her duties are those of a junior accountant." The letter fails to describe her duties and responsibilities and certainly does not satisfactorily establish that she is employed as an accountant. It is noted that in the Form ES 575 previously mentioned the applicant describes her title at the certified public accounting firm as "junior accountant" and describes her duties as "verifies additions, checks audits, postings and vouchers, analyzes accounts and prepares statements." This description of her duties is self-serving and unsupported and is wording extracted exactly word for word, from the description of the occupation of junior accountant as defined in Volume 1 of the *Dictionary of Occupational Titles*. No more credence can be given this description of her duties than is to be given to her claim, also contained in the Form ES 575, that she had received a major in accounting from Woodbury College in 1970.

The District Director denied the petition on January 29, 1971 and denied the motion to reopen on February 16, 1971. The applicant, at the very most, had but 19 ⅔ semester units in accounting and was academically not qualified as a professional accountant. Furthermore, her academic preparation, coupled with her limited work experience, cannot be equated to the equivalent of a baccalaureate degree or a major in the field of accounting. The denial of the petition and denial of the motion by the District Director were well-founded and correct decisions.

Counsel, with his brief presented in support of his appeal dated September 22, 1971, presented evidence that the applicant attended California State College, Los Angeles, during the spring quarter of 1971 and completed a course titled "auditing 1", earning four

quarter units. At the time of oral argument in support of the appeal (October 12, 1971), counsel also presented a "notification of grade change" dated September 29, 1971 from California State College, Los Angeles, addressed to "Dear Student", stating that "your grade in Bus. 321 (tax acctg) has been changed from Inc. to B." This notice does not indicate to whom addressed or the number of quarter units earned in the related course.

Counsel argues that these units, earned subsequent to filing of the petition and subsequent to the District Director's denial decision, should be totalled with the units applicant had previously earned prior to the time of filing her petition. We do not agree.

When a third preference petition is filed, it seeks to establish that the beneficiary is a qualified member of the professions at that time eligible for preference. If the petition is approved, he has established a priority date for visa number assignment as of the date that petition was filed. A petition may not be approved for a profession for which the beneficiary is not qualified at the time of its filing. The beneficiary cannot expect to qualify subsequently by taking additional courses and then still claim a priority date as of the date the petition was filed, a date on which he was not qualified.

Section 204 of the Act requires the filing of a visa petition for classification under section 203(a)(3). The latter section states, in pertinent part: "Visas shall next be made available to *qualified immigrants* who *are members* of the professions." (Emphasis added.) It is clear that it was the intent of Congress that an alien be a recognized and fully qualified member of the professions at the time the petition is filed. Congress did not intend that a petition that was properly denied because the beneficiary was not at that time qualified be subsequently approved at a future date when the beneficiary may become qualified under a new set of facts. To do otherwise would make a farce of the preference ystem and priorities set up by statute and regulation.

Counsel also argues that the Service has failed to give due credit to the applicant's work experience and quotes a number of published decisions wherein an alien was found qualified as a member of the professions by a combination of education and work experience. The applicant in the present case had only two months of limited work experience prior to the filing of her petition when she had, at most, 19 ⅔ academic semester units in accounting. This very limited experience does not make up for the lack of her academic credits. In the published decisions cited by counsel the petitioners generally had many years of responsible experience in supervisory and executive positions; some had taken additional vocational and/or specialized training in their fields, others had

49

received honors in their field and were recognized as authorities in their professions. All had constantly enhanced their skills and progressively acquired greater responsibilities in their chosen endeavors.

Considering all the factors discussed above, we find that the denial decisions of the District Director were proper. The applicant has not established that she is eligible for the preference classification she seeks.

The *Matter of Brantigan*, 11 I. & N. Dec. 493, holds that the burden of proof to establish eligibility for a desired preference rests with the petitioner. That burden has not been met. The applicant has not etablished that she is eligible for preference classification under section 203(a)(3) of the Act. The appeal will be dismissed.

The denial of this petition is without prejudice to the applicant submitting a new petition setting forth the new facts as they now exist.

**ORDER:** It is ordered that the appeal be dismissed.

50