MATTER OF GREAT WALL

In Visa Petition Proceedings

A-19784032

*Decided by Acting Regional Commissioner March 16, 1977*

(1) Petitioner sought to classify beneficiary for the issuance of an immigrant visa under section 203(a)(6) of the Immigration and Nationality Act as a store manager at a salary of $850.00 per month. The record reveals that at the time the petition was filed the petitioner did not and could not pay the proffered wage indicated in the job offer (Form MA 7–50B) nor did the petitioner establish on appeal that he could and would be able to pay the beneficiary the salary offered in the future.

(2) A visa petition for sixth-preference classification will be denied where it is found that the beneficiary is not being paid the wages specified in the Job Offer for Alien Employment at the time the petition was filed because section 204(b) of the Act requires a determination that all the facts stated in the petition are true before the petition may be approved.

ON BEHALF OF PETITIONER: Alwin S. M. Tan, Esquire
700 West Towers Building
1200—35th Street
West Des Moines, Iowa 52065

This matter comes forward on appeal from the order of the District Director who on November 18, 1976, denied the petition for sixth preference to classify the beneficiary as a store manager. The District Director determined that the petitioner had failed to establish that he was financially able to pay the salary rate as stated in the job offer.

The petitioner is an Oriental gift shop and food store. The beneficiary is a 25-year-old male, single, native of China, and citizen of Hong Kong, who last entered the United States as a nonimmigrant student. Review of his Statement of Qualifications submitted with the petition and signed December 19, 1975, reflects that his major field of study from July 1970 through November 1974 was industrial engineering without receipt of a degree. In January 1974 he began study at Simpson College and received a Bachelor of Arts Degree with an economics major on May 25, 1975.

The petitioner in his job offer, which is dated December 16, 1975, stated he wished to hire the beneficiary as a store manager at the rate of $850.00 per month for a 40–48-hour week. In the job offer and the

petition itself (filed with the Service on April 9, 1976) he stated that the annual income of the organization was $50,000.00, and that there were two to three other employees at the establishment. There is no question that the beneficiary meets the requirements as set forth in the certified job offer. The issue herein is whether the petitioner is qualified to proffer the employment. It is noted that the petitioner's original request for labor certification was denied on January 22, 1976, but the denial was reversed on March 24, 1976, on the basis of the petitioner's assurance that the wage offer would be increased.

Further Service inquiry of the petitioner's business revealed that Great Wall, Inc., has issued $21,000.00 worth of common stock. Mr. Shau Chung Hu, who signed the petition, owns $10,000.00, the beneficiary owns $10,000.00 and the beneficiary's sister owns $1,600.00 worth of stock in the company.

The beneficiary has also loaned the corporation $3,000.00 which admittedly was to cover operating expenses rather than for expansion of the business. The source of these funds was his mother. The beneficiary also admitted that although he had been employed by Great Wall, Inc., since September 1975, he had not received a salary as of September 14, 1976. It was further revealed that the two to three employees shown on the petitioner's job offer were, in fact, two part-time employees. The estimated inventory of Great Wall, Inc., as of September 14, 1976, was $10,000.00. At that time the following total sales were shown in the corporation's books:

| | | |
|---|---|---|
| November 1975 | — | $4,190.00 |
| December 1975 | — | 8,278.00 |
| January 1976 | — | 2,223.00 |
| February 1976 | — | 1,802.00 |
| March 1976 | — | 2,086.00 |
| April 1976 | — | 1,700.00 |
| May 1976 | — | 1,736.00 |
| June 1976 | — | 2,332.00 |

There were no figures for July and August, 1976. Monthly rent for the shop was $538.00, electricity $40.00—$100.00, and salary for the two part-time employees was $200.00—$300.00 per month.

On appeal, the petitioner, through counsel, concedes that the shop will not realize a profit, and, in fact, will suffer a loss. However, the petitioner urges that a prospective view of the venture be taken since it is relatively new. An uncertified income statement was submitted on appeal covering the period June 1, 1975 to May 31, 1976, which reflects a net loss (based on fiscal year) of $2,110.37. The petitioner also stated for the record in a letter dated December 29, 1976, that the beneficiary is now receiving his wages and will continue to receive them; however, no

evidence to support such claim has been produced. The brief on appeal, among other things, stated that the beneficiary's salary will be paid in stocks at the next annual meeting of the corporation.

The fact that the petitioner may, sometime in the future, be able to pay the wage of $850.00 per month has been taken into consideration. However, in visa petition proceedings the burden of proof to establish eligibility rests with the petitioner (*Matter of Brantigan*, 11 I. & N. Dec. 493). The record in the instant case reflects that at the time the petition was filed with this Service the petitioner did not and could not pay the offered wage. Prospectively, the petitioner has not conclusively borne his burden and established on appeal that he can and will be able to pay the beneficiary the salary of $850.00 per month as offered on December 16, 1975.

The certification required by section 212(a)(14) of the Immigration and Nationality Act, as amended, (the Act) was issued on March 24, 1976. At the time that Section 212(a)(14) was originally enacted, the drafters of the Immigration and Nationality Act stated that the purpose of the provision was "to provide strong safeguards for American labor and to provide American labor protection against an influx of aliens entering the United States for the purpose of performing skilled or unskilled labor where the economy of individual localities is not capable of absorbing them *at the time they desire to enter this country.*" (Emphasis supplied.) H.R. Rep. No. 1365, 82nd Cong. 2nd Session (1952), reprinted in (1952) U.S. Code Cong. & Ad. News 1705.

The petition, if approved, would establish a priority date as of the date that the job offer (Form MA 7–50B) was accepted for processing by any office within the employment service system of the Department of Labor. In the instant case the priority date for visa issuance to the beneficiary would be January 2, 1976, pursuant to Federal Regulations at 8 C.F.R. 204.1(c)(2).

Section 204(a) of the Act requires the filing of a visa petition for classification under section 203(a)(6). Section 204(b) states, among other things, "After an investigation of the facts in each case, and after consultation with the Secretary of Labor with respect to petitions to accord a status under Section 203(a)(3) or (6), the Attorney General shall, *if he determines that the facts stated in the petition are true* and that the alien in behalf of whom the petition is made is . . . eligible for a preference status under Section 203(a), approve the petition . . ." (Emphasis supplied.)

When a sixth-preference petition is filed, it seeks to establish that the employer is making a realistic job offer to an alien who is qualified, and that the proposed employment will not displace United States workers at the time the petition is filed. I do not feel, nor do I believe the Congress intended, that the petitioner, who admittedly could not pay

144

the offered wage at the time the petition was filed, should subsequently become eligible to have the petition approved under a new set of facts hinged upon probability and projections, even beyond the information presented on appeal.

Eligibility for the preference being sought at the time of filing of the petition was previously decided by the Regional Commissioner in *Matter of Katigbak*, 14 I. & N. Dec. 45. I am aware that *Katigbak* is not foursquare with the instant case in that the Regional Commissioner considered the *beneficiary's* eligibility for third preference at the time the petition was filed. However, it was determined that the beneficiary must be qualified at the time the petition is filed with this Service if a priority date for visa issuance is to be established.

In sixth-preference visa petition proceedings the Service must consider the merits of the petitioner's job offer, so that a determination can be made whether the job offer is realistic and whether the wage offer can be met, as well as determine whether the alien meets the minimum requirements to perform the offered job satisfactorily. It follows that such consideration by the Service would necessarily be focused on the circumstances at the *time of filing* of the petition. The petitioner in the instant case cannot expect to establish a priority date for visa issuance for the beneficiary when at the time of making the job offer and the filing of the petition with this Service he could not, in all reality, pay the salary as stated in the job offer. See *Matter of Sonegawa*, 12 I. & N. Dec. 612, wherein it is held that the petitioner must demonstrate financial ability to meet the wage requirements of the certified job offer.

The brief and documentation in support of the appeal before me do not substantially challenge the initial material on file considered by the District Director in his decision. I have carefully considered the entire record in this matter and I concur with the findings of the District Director. Accordingly, I will order that the appeal be dismissed.

The denial of this petition is without prejudice to the submission of a new petition accompanied by a new labor certification establishing facts as they now exist.

IT IS ORDERED that the appeal be and the same is hereby dismissed.