**MASONRY MASTERS, INC., successor to Tenco Masonry, Inc., Appellant,**

**Rigoberto Perdomo**

**v.**

**Richard THORNBURGH, Attorney General of the U.S., et al.**

No. 87–5337.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 13, 1988.

Decided May 19, 1989.

Susan Au Allen, for appellant. Paul Shearman Allen, Washington, D.C., was on the brief, for appellant.

Bradley L. Kelly, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John B. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

Before EDWARDS and WILLIAMS, Circuit Judges, and REYNOLDS,* Senior District Judge.

Opinion for the Court filed by Senior District Judge REYNOLDS.

REYNOLDS, Senior District Judge:

Masonry Masters, Inc., and Rigoberto Perdomo appeal from a decision of the District Court for the District of Columbia granting the Immigration and Naturalization Service's ("INS") motion for summary judgment and approving the INS's denial of Masonry Masters' petition for a sixth-preference immigration visa. Masonry Masters challenges the INS's authority to require an employer, who is applying for a sixth-preference visa on behalf of an alien employee, to demonstrate the employer's ability to pay the offered wage at the time the employer first submits an application for certification to the Department of Labor ("DOL"). The INS first imposed this requirement in *Matter of Great Wall*, 16 I & N Dec. 142 (A.R.C.1977). Pursuant to this requirement, the INS asked Masonry Masters to prove that it could have paid the offered wage in 1979, the year Masonry Masters first submitted a certification application to the DOL, even though the DOL did not issue the certification until 1982, and the INS did not consider Masonry Masters' visa petition until 1984.

We find that although the INS has the authority to investigate Masonry Masters' ability to pay at the time Masonry

* Of the United States District Court for the Eastern District of Wisconsin, sitting by designation pursuant to 28 U.S.C. § 294(d).

Masters applied for labor certification, it is an abuse of the INS's discretion to insist on evidence of Masonry Masters' ability to pay anything more than the prevailing wage at the time of the application for labor certification. We, therefore, reverse the district court's judgment and remand this case for further proceedings consistent with this decision.

## I. FACTS

Appellant Masonry Masters is a construction contractor in the Washington, D.C., metropolitan area. Masonry Masters is a successor in interest to Tenco Masonry, Inc. ("Tenco"), which is no longer in business. Appellant Rigoberto Perdomo ("Perdomo") is an El Salvadoran national who has worked for Masonry Masters and its predecessor Tenco as a bricklayer since 1978.

In 1979, Tenco began the process of securing a sixth-preference immigration visa[1] for Perdomo by applying to the DOL for alien labor certification as an immigrant bricklayer, pursuant to section 212(a)(14) of the Immigration and Nationality Act ("Act"), 8 U.S.C. § 1182(a)(14) (1982).[2] In its application to the DOL, Tenco stated that it would pay Perdomo $10 per hour. On March 17, 1982, the DOL approved Tenco's application, certifying that there were not sufficient United States workers to perform the services of bricklayers, and that the employment of Perdomo would not affect the wages and working conditions of United States workers similarly employed.

On January 12, 1984, Tenco submitted Perdomo's visa petition to the INS. The Code of Federal Regulations required Tenco to submit a "Statement of Qualifications of an Alien and the Job Offer For Alien Employment forms ... and any documents required to be presented with those forms." 8 C.F.R. § 204.2(i) (1988). In February, the INS asked Tenco to submit financial statements or balance sheets which would demonstrate that as of 1979, the filing date of the application for the DOL certification, Tenco had the ability to pay Perdomo $10 per hour. Tenco responded to the INS's inquiry by submitting a certified letter stating the wages paid to Perdomo for the years 1979 through 1983. Tenco's letter indicated that Perdomo was not paid $10 per hour in 1979, but also indicated that Perdomo was paid over $10 per hour in 1984. Tenco states that it did not submit financial statements or balance sheets because in May 1984 Tenco was transferred to Masonry Masters, Inc., and the business records for the years 1979 through 1984 were not retained.

On June 19, 1985, the INS denied Masonry Masters' visa petition because Masonry Masters did not pay Perdomo the offered wage of $10 per hour in 1979, and had not submitted the financial statements and balance sheets to demonstrate its ability to pay Perdomo the offered wage in 1979.[3] Masonry Masters filed an administrative appeal which was denied, as was Masonry

---

1. The sixth preference immigration visa permits entry of aliens "who are capable of performing specified skilled or unskilled labor, not of a temporary or seasonal nature, for which a shortage of employable and willing persons exists in the United States." 8 U.S.C. § 1153(a)(6).

2. 8 U.S.C. § 1182(a)(14) provides in pertinent part:

   Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor [shall be ineligible to receive visas], unless the Secretary of Labor has determined and certified to the Secretary of State and the Attorney General that (A) there are not sufficient workers who are able, willing, qualified ... and available at the time of application for a visa and admission to the United States and at the place where the alien

is to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed.

3. On June 18, 1985, the INS granted Masonry Masters' visa application for Jose Lizandro Del Cid, another alien bricklayer. The INS's granting of Del Cid's visa is not inconsistent with the INS's decision to deny Perdomo's visa application because there is no evidence in the record to indicate that the INS ever requested, or that Masonry Masters ever provided, documentation concerning its ability to pay Del Cid. The legality of the INS's "spot check" of a random sampling of visa applications has not been challenged.

Masters' motion for reconsideration. In its motion for reconsideration, Masonry Masters submitted, among other things, an affidavit from Masonry Masters' controller Virgilio Longo which stated that Masonry Masters had the ability to pay Perdomo $10 per hour in 1979, and copies of Perdomo's Federal Tax Forms W–2 for the years 1979 through 1983.

Masonry Masters then brought an action for a declaratory judgment in district court claiming that the INS had acted arbitrarily and contrary to law. The district court rejected Masonry Masters' claim and granted summary judgment in favor of the INS, 664 F.Supp. 9 (1987). Masonry Masters has appealed the district court's decision on several grounds; however, the dispositive issue on this appeal concerns the scope of the INS's authority to investigate an employer's ability to pay an alien at the time the employer applies for DOL certification.

## II. ANALYSIS

Masonry Masters applied for a sixth-preference visa for Perdomo. Sixth-preference visas are available to aliens capable of performing skilled or unskilled labor of a permanent nature "for which a shortage of employable and willing persons exists in the United States." 8 U.S.C. § 1153(a)(6) (1982). In seeking a sixth-preference visa, an employer is required to file a petition with the Attorney General. 8 U.S.C. § 1154 (1982). The Attorney General has delegated all powers relating to the immigration and naturalization of aliens, including the issuance of sixth-preference visas, to the INS. 8 C.F.R. § 2.1 (1988).

Before the INS will grant a sixth-preference visa petition, however, the DOL must certify that there is not a sufficient number of American workers, and that the alien's employment will not adversely affect American workers similarly employed. 8 U.S.C. § 1182(a)(14) (1982). The DOL, in assuring itself that the proposed employment will not have the forbidden adverse effect on employment of American workers

requires the applicant to submit evidence that "[t]he wage offered equals or exceeds the prevailing wage determined pursuant to § 656.40, and the wage the employer will pay to the alien when the alien begins work will equal or exceed the prevailing wage which is applicable at the time the alien begins work." 20 C.F.R. § 656.20(c)(2) (1988).

■ Masonry Masters has argued that the DOL, and not the INS, has the authority to investigate Masonry Masters' ability to pay Perdomo the prevailing wage. This argument has no merit.

The INS's investigation into Masonry Masters' ability to pay Perdomo is clearly within the INS's authority because it relates to whether Masonry Masters' job offer is realistic, and does not involve an inquiry into determinations expressly delegated to the DOL or question the validity of the DOL certification. *Madany v. Smith*, 696 F.2d 1008, 1012–13 (D.C.Cir. 1983). The DOL's role in granting the labor certification is a limited one. Although the DOL had the responsibility for determining that Masonry Masters' employment of Perdomo would not adversely affect similarly situated American workers, it is the responsibility of the INS to determine whether Masonry Masters realistically can pay the prevailing wage. *Ubeda v. Palmer*, 539 F.Supp. 647, 650 (N.D.Ill. 1982), *aff'd mem.*, 703 F.2d 571 (7th Cir. 1983).

■ In short, an applicant for a sixth-preference visa must convince the DOL that the offered wage is equal to or greater than the prevailing wage, and convince the INS that the job offer is realistic. Taken together, the applicant may be required to prove an ability to pay the prevailing wage.

In 1977, the INS first decided to test the realism of a job offer by investigating the employer's ability to pay the worker the offered wage as of the date of the application for DOL certification. The INS ex-

plained in *Matter of Great Wall*, 16 I & N Dec. 142 (A.R.C.1977):

> In sixth-preference visa petition proceedings, the Service must consider the merits of the petitioner's job offer, so that a determination can be made whether the job offer is realistic and whether the wage offer can be met as well as determine whether the alien meets the minimum requirements to perform the offered job satisfactorily. It follows that such consideration by the Service would necessarily be focused on the circumstances at the *time of filing* of the petition. The petitioner in the instant case cannot expect to establish a priority date for visa issuance for the beneficiary when at the time of making the job offer and the filing of the petition with this Service he could not, in all reality, pay the salary as stated in the job offer.

*Id.* at 145 (emphasis in original).

This explanation expresses the INS's concern that, since the filing of an application for DOL certification establishes visa issuance priority, it would be unfair to allow an employer to get into the line for processing at a time when it is unable to meet the INS requirements.[4] The INS's decision in *Great Wall* may also express a concern that allowing employers to file for labor certification at a time when they are unable to pay the offered wage would increase the incidence of unrealistic applications and thereby waste the INS's time. Although the data concerning an employer's ability to pay at the time of applying for DOL certification may well be obsolete by the time the INS issues the visa petition, the INS's reasons for demanding such data are rational.

The entanglement of the INS's requirements with those of the DOL, however, seem to place an irrational burden on Masonry Masters, and perhaps it commonly creates such a burden. Masonry Masters' offered wage (item 29 on the DOL's form, "Application for Alien Employment Certification—Job Offer for Alien Employment") must meet the DOL's view of the *prevailing wage*. It appears that the DOL determines the prevailing wage at the time it reviews the application and issues the certification. Certainly 20 C.F.R. § 656.20(c)(2), quoted above, in no respect suggests a backward-looking determination. Moreover, the terms of 8 U.S.C. § 1182(a)(14), which call for a finding that the employment "will not adversely affect the wages and working conditions of the workers in the United States similarly employed," invite a consideration of the future. Therefore, in specifying its offered wage, an employer must at least keep one eye on the time when the DOL is likely to get around to passing upon the labor certification application. In this case, that moment arrived three years after Masonry Masters filed its application.

Under these circumstances, it is hard to make sense of the INS's insistence that Masonry Masters demonstrate an ability to pay Perdomo $10 an hour—the offer specified in Masonry Masters' application for DOL certification—in 1979. As one may infer from the DOL's certification that the prevailing wage was at or below $10 an hour in 1982, it is most improbable that $10 an hour was a realistic or prevailing wage in 1979. On such a record, it is an abuse of the INS's discretion to insist on evidence of Masonry Masters' ability to pay Perdomo $10 an hour in 1979. On remand, the INS's inquiry into Masonry Masters' ability to pay in 1979 should be limited to an ability to pay some figure reasonably determined to have been the prevailing wage in 1979.

---

**4.** Title 8, Part 204, Section 1(d)(2) of the Code of Federal Regulations provides in pertinent part: (2) *Filing date.* In the case of a third or sixth preference petition (except for an occupation listed in Schedule A), the filing date of the petition within the meaning of section 203(c) of the Act will be the date the request for certification was accepted for processing by any office within the employment service system of the Department of Labor.

The court also wishes to express concern over the INS's view as to suitable evidence to demonstrate ability to pay. In rejecting Masonry Master's visa petition for Perdomo on June 19, 1985, the INS wrote:

When this Service requested evidence of your ability to pay, you were advised that the evidence could be in the form of [1] balance sheets or [2] a financial statement indicating that your gross income less expenses leaves a net profit sufficient to pay the proffered wage.

INS Decision at 2.

The INS's approach is puzzling. The balance sheet is only a snapshot of the employer's assets at a given moment and, thus, speaks only obliquely to the employer's ability to generate cash for payment of wages at some later date. The INS's interest in the income statement appears to assume that the worker will contribute nothing to income. This seems wholly unrealistic; one would expect an employer to hire only workers whose marginal contribution to the value of the company's production equals or exceeds their wages. Assuming that the INS has some theory as to how to assess an employer's ability to pay a wage, it would be helpful if it revealed what it was.

In light of the foregoing, the judgment of the district court is reversed, and this case is remanded for further proceedings consistent with this decision.