MASONRY MASTERS, INC., et al., Plaintiffs,

v.

Richard THORNBURGH, et al., Defendants.

Civ. A. No. 86–0201 (CRR).

United States District Court, District of Columbia.

July 17, 1990.

As Amended July 31, 1990.

Paul Shearman Allen and Susan Au Allen, Washington, D.C., for plaintiffs.

Susan A. Nellor & Bradley L. Kelly, Asst. U.S. Attys., with whom Jay B. Stephens, U.S. Atty., and John D. Bates, Asst. U.S. Atty., Washington, D.C., were on the briefs, for defendants.

## OPINION

CHARLES R. RICHEY, District Judge.

This is a long-running dispute between the Immigration and Naturalization Service ("INS") and a contractor (Masonry Masters) applying for an immigration visa for a resident alien bricklayer employee (Rigoberto Perdomo). The INS denied the 1979 application because Masonry Masters allegedly failed to establish its ability to pay the $10 per hour prevailing wage. After this Court granted the INS' summary judgment motion, the United States Court of Appeals reversed and remanded, holding that it was an abuse of discretion for the INS "to insist on evidence of Masonry Masters' ability to pay anything more than the prevailing wage [in 1979] at the time of the application for labor certification." *Masonry Masters, Inc. v. Thornburgh*, 875 F.2d 898, 900 (D.C.Cir.1989). On remand, the parties have again filed cross-motions for summary judgment. Upon consideration of the Court of Appeals' opinion, the parties' submissions, and the entire record herein, the Court will grant summary judgment for the plaintiffs because the INS' denial of their visa petition was an abuse of discretion.

### I. Background

A sixth-preference visa is available to an alien who is "capable of performing specified skilled or unskilled labor, not of a temporary or seasonal nature, for which a shortage of employable and willing persons exists in the United States." 8 U.S.C. § 1153(a)(6). An employer seeking a sixth-preference visa is required to file a petition with the Attorney General, who "has delegated all powers relating to the immigration and naturalization of aliens, including the issuance of sixth-preference visas, to the INS." *Masonry Masters*, 875 F.2d at 901 (citing 8 U.S.C. § 1154; 8 C.F.R. § 2.1 (1988)).

A prerequisite to the INS' granting such a sixth-preference visa petition is a certification by the Department of Labor ("DOL") (1) that there are not sufficient United States citizens available who are able, willing, and qualified to fill the posi-

tion of the alien applicant and (2) that employment of the alien applicant will not adversely affect similarly employed United States citizens. 8 U.S.C. § 1182(a)(14). To satisfy itself that the second part of this test has been met, the DOL requires the employer to show that it has sufficient funds to pay the wage offered the alien, 20 C.F.R. § 656.20(c)(1), and that "[t]he wage offered equals or exceeds the prevailing wage determined pursuant to § 656.40, and the wage the employer will pay to the alien when the alien begins work will equal or exceed the prevailing wage which is applicable at the time the alien begins work," § 656.20(c)(2).

█ It is now established that the DOL's role in granting labor certification is limited and that the INS has the authority to investigate whether an employer can realistically pay the alien the prevailing wage. *Masonry Masters*, 875 F.2d at 901. In exercising this authority, the INS investigates the employer's ability to pay the alien employee the offered wage *as of the filing date of the employer's application* for DOL certification. *Id.* at 901–02 (quoting *Matter of Great Wall*, 16 I & N Dec. 142 (A.R.C.1977)).

> In short, an applicant for a sixth-preference visa must convince the DOL that the offered wage is equal to or greater than the prevailing wage, and convince the INS that the job offer is realistic. Taken together, the applicant may be required to prove an ability to pay the prevailing wage.

*Id.* at 901.

In 1979 Masonry Masters began the certification process by filling out and submitting to the DOL two "Application for Alien Employment Certification" forms (DOL Form 750–B), one for the plaintiff Rigoberto Perdomo and one for another alien bricklayer named Jose Lizandro Del Cid. The information provided on the two applications was identical, except for the names of the alien employees and the dates on which they began their respective employment

with Masonry Masters.[1] Once the DOL issued labor certifications on both applications, Masonry Masters petitioned the INS for sixth-preference visas for Perdomo and Del Cid. After requesting Masonry Masters to submit evidence of its ability to pay Perdomo and Del Cid the offered wage and receiving almost identical information, *see infra* at 687, the INS approved the Del Cid petition but rejected the Perdomo petition because Masonry Masters allegedly had not established its ability to pay in 1979 the $10 per hour wage it offered in Item 29 of the DOL application.

## II. Analysis

Settling the issue of what time-frame the INS and a reviewing court must look to when evaluating an employer's ability to pay an offered wage, the Court of Appeals held that the $10 per hour figure offered by Masonry Masters in Item 29 of the DOL form was the "prevailing wage" in 1982 when the DOL passed on, and approved, the labor certification application. *Masonry Masters*, 875 F.2d at 902. Moreover, using unequivocal language that governs this Court's resolution of this case, the Court of Appeals concluded:

> As one may infer from the DOL's certification that the prevailing wage was at or below $10 an hour in 1982, it is most improbable that $10 an hour was a realistic or prevailing wage in 1979 [when the application for certification was filed]. On such a record, it is an abuse of the INS's discretion to insist on evidence of Masonry Masters' ability to pay Perdomo $10 an hour in 1979. On remand, the INS's inquiry into Masonry Masters' ability to pay in 1979 should be limited to *an ability to pay some figure*

> reasonably determined to have been the prevailing wage in 1979.

*Id.* (emphasis added).

### A. Masonry Masters' Ability to Pay Prevailing Wage in 1979

It is well-established that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron, USA, Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). However, it is equally clear that an agency is not entitled to the same broad deference when it oversteps the scope of its authority, *see Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415–16, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971), and acts contrary to clear congressional intent, *see INS v. Cardoza–Fonseca*, 480 U.S. 421, 447–48, 107 S.Ct. 1207, 1221–22, 94 L.Ed.2d 434 (1987) (quoting *Chevron*, 467 U.S. at 843 n. 9, 104 S.Ct. at 2781 n. 9), or to governing regulations, *see California Human Dev. Corp. v. Brock*, 762 F.2d 1044, 1049 (D.C.Cir.1985).

Here, the INS has overstepped its authority, failing to abide by the DOL's governing regulations.[2] The defendants concede that the DOL—and not the INS—is "the agency with statutory authority to issue wage determinations." Defendants' Opposition at 7. Moreover, the regulations governing the DOL's labor certification process specifically state that, if the job for which an employer is seeking certification is subject to wage determination under the Davis–Bacon Act, 40 U.S.C. § 276a *et seq.*, "then the prevailing wage *shall* be at the rate required under the statutory determi-

---

1. *Compare* Perdomo Certification Application (Exhibit A attached to Defendants' Motion for Summary Judgment Motion) *with* Del Cid Certification Application (Exhibit A attached to Plaintiffs' Cross–Motion for Summary Judgment). Item 18 on each of the applications indicated that Perdomo began working for Masonry Masters in March 1978 whereas Del Cid's employment commenced January 1977. Both Perdomo and Del Cid worked for Masonry Masters as Apprentice Bricklayers.

2. It does not matter that the regulations which the INS has failed to follow are promulgated by the DOL. Since the DOL is the agency with the authority to make prevailing wage determinations and since its regulations control in this congressionally-mandated scenario of joint agency activity, the INS' failure to abide by the DOL's regulations is tantamount to an agency refusing to adhere to its own regulations. *See Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 536 (D.C.Cir.1986) (Scalia, J.) ("[i]t is axiomatic that an agency must adhere to its own regulations").

nation." 20 C.F.R. § 656.40(a)(1) (emphasis added).

■ Pursuant to authority conferred by statute and regulation, *see, e.g.,* Davis–Bacon Act, 40 U.S.C. § 276a *et seq.* (setting rates of wages for laborers and mechanics employed under government contracts); 29 C.F.R. §§ 1.1–1.9 (1984) (procedures for predetermination of wage rates), the DOL periodically publishes wage determinations for certain jobs, including the job of residential bricklayer. According to these published DOL wage determinations, the prevailing wage for residential bricklayers in Washington, D.C. in 1979 was $7.50 per hour. DOL Employment Standards Administration's General Wage Determination Decisions, Decision No. DC76–3171, 41 Fed. Reg. 21,022, 21,027 (1976); *see also* Affidavit of Charles J. Hayes (Exhibit I attached to Plaintiffs' Cross–Motion for Summary Judgment). The plaintiffs argue—and this Court agrees—that both the DOL and the INS were bound by this published wage determination in evaluating the plaintiffs' application.

Attempting to diminish the force of this analysis based upon the DOL's published wage determinations, the defendants contend that the $7.50 wage determination published by the DOL in 1976 was no longer controlling in 1979 when the plaintiffs applied for DOL certification. The defendants rely upon the DOL's new—and superseding—wage determinations published in May 1980 that set the prevailing wage for a residential bricklayer at $10.60 per hour. *See* DOL Employment Standards Administration's General Wage Determination Decisions, Supersedeas Decision No.

DC80–3039, 45 Fed.Reg. 30,968, 30,976 (1980). Accordingly, the defendants argue that, assuming a gradual incremental increase from the 1976 prevailing wage of $7.50 to the 1980 prevailing wage of $10.60, the 1979 prevailing wage had to be between $9 and $10 per hour.

While this argument may be highly creative, it is also highly unpersuasive. It defies common sense that a prevailing wage, set as a matter of law by publication in the Federal Register, would increase *sua sponte* over time; absent clairvoyance, what source other than the 1976 published wage determination decisions could the DOL consult in 1979 to arrive at the prevailing wage? Furthermore, the defendants' argument also flies in the face of the DOL's explicit statements that "General Wage · Determination Decisions are effective from their date of publication in the Federal Register *without limitation as to time,*" 41 Fed.Reg. at 21,022 (emphasis added), and that "[m]odifications and supersedeas decisions are effective *from their date of publication in the Federal Register* without limitation as to time," 45 Fed.Reg. at 30,968 (emphasis added); *see also* March 29, 1990 Letter from Nancy M. Flynn, Acting Administrator of DOL's Employment Standards Administration (attached as Exhibit 1 to Plaintiffs' Reply) (Wage Decision No. DC76–3171, and its prevailing wage rate of 7.50 per hour, was in effect in 1979 and until it was superseded in 1980).[3]

In short, the Court will not defer to an INS prevailing wage analysis that directly contradicts the DOL's published governing

**3.** The defendants' alternative argument—that the plaintiffs never contended that Perdomo would work as a "residential bricklayer"—also misses the mark. By the same token, the defendants never argued—as they do now—that Perdomo would work as a "commercial construction bricklayer" with a wage approximately $2 per hour more than a residential bricklayer. Until now, both parties merely used the more general term "bricklayer," which is hardly surprising considering that the issues previously addressed were framed differently from the question remaining to be resolved here in accordance with the Court of Appeals' remand.

In any event, the plaintiffs did notify the Court of Appeals at oral argument that Masonry Masters is (and its predecessor in interest Tenco was) a *residential* construction contractor. *See* Transcript at 3, 9 (attached as Exhibit 10 to Plaintiffs' Reply). Moreover, Masonry Masters' President has sworn that "[f]rom 1977 until May, 1984 Tenco ... was engaged primarily in residential construction [and that] ... in 1979 75% or more of company earnings were derived from residential masonry contracting." Affidavit of Virgil Longo (attached as Exhibit 9 to Plaintiffs' Reply). The defendants have pointed to nothing on the record before this Court to contradict the plaintiffs' claims.

wage determination decision. Because the Court holds, as a matter of law, that the DOL set the prevailing wage for a residential bricklayer, like Perdomo, in Washington, D.C. in 1979 at $7.50 per hour, 41 Fed.Reg. at 21,027, no genuine issue of material fact exists as to the prevailing wage applicable in this case.[4]

■ Similarly, it is beyond dispute that Masonry Masters has amply demonstrated its ability to pay the prevailing wage of $7.50 in 1979. The 1979 W–2 form and Perdomo's affidavit as to the number of hours he worked in 1979, both of which Masonry Masters provided to supplement the record during the administrative appeal of this case, see Adm.Rec. at 33–34, showed that Masonry Masters paid Perdomo $7.50 per hour in 1979. Thus, while Masonry Masters' documentation may have been insufficient to establish its ability to pay Perdomo $10 per hour in 1979, the defendants correctly concede that Masonry Masters did pay him $7.50 in 1979. See Defendants' Opposition at 2. Thus, because the prevailing wage in 1979 was $7.50 per hour and because Masonry Masters clearly had the ability to pay that prevailing wage when it initiated the DOL certification process in 1979, the defendants' rejection of the plaintiffs' sixth-preference visa was an abuse of discretion. 

### B. INS' Inconsistent Decisions as to Perdomo and Del Cid

■ An alternative ground for this Court's reluctance to give broad deference to the INS in this case and the Court's holding that the defendants' abused their discretion is the inexplicable, irreconcilable inconsistency between their decision to reject Perdomo's visa petition and contemporaneously accept, under identical circumstances, Masonry Masters' petition on behalf of Del Cid. See, e.g., INS v. Cardoza–Fonseca, 480 U.S. 421, 447 n. 30, 107 S.Ct. 1207, 1221 n. 30, 94 L.Ed.2d 434 (1987) ("An additional reason for rejecting the Government's request for heightened deference ... is the inconsistency of the positions the [Board of Immigration Appeals] has taken through the years. An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view." (quoting Watt v. Alaska, 451 U.S. 259, 273, 101 S.Ct. 1673, 1681, 68 L.Ed.2d 80 (1981)).[5]

By denying Perdomo's and granting Del Cid's petition, the INS violated the rule

---

4. In light of such strong authority that the prevailing wage in 1979 for a residential bricklayer was $7.50 per hour, the support for the defendants' contention that the prevailing wage was $10 per hour pales by comparison. See Affidavit of Thomas Bruening (attached as Exhibit A to Defendants' Motion for Summary Judgment). In addition to being inconsistent with the DOL's published wage determinations discussed above, the Bruening affidavit is unpersuasive and fails to create a genuine issue of material fact because it is not based on personal knowledge. The affiant admits that he has been employed at DOL only since 1984, see id. at ¶ 1, about five years after the 1979 prevailing wage determination at issue here, and his statement as to the prevailing wage in 1979, based upon his "experience" with the alien labor certification process, is phrased in general terms of what the $10 per hour figure "would reflect," id. at ¶ 9 (emphasis added). Moreover, the affiant does not indicate that he himself has made any prevailing wage determinations, and he misstates the governing legal standard. Compare id. at ¶ 5 ("the local employment service office will determine whether the proffered wage is equal to the prevailing wage" (emphasis added)) with 20 C.F.R. § 656.20(c)(2) (DOL certification application must clearly show that "[t]he wage offered equals or exceeds the prevailing wage" (emphasis added)).

5. This Court is aware of the following statement contained in a footnote to the Court of Appeals opinion:

> The INS's granting of Del Cid's visa is not inconsistent with the INS's decision to deny Perdomo's visa application because there is no evidence in the record to indicate that the INS ever requested, or that Masonry Masters ever provided, documentation concerning its ability to pay Del Cid. The legality of the INS's "spot check" of a random sampling of the visa applications has not been challenged.

Masonry Masters, 875 F.2d at 900 n. 3 (emphasis added). Although the legality of INS' random sampling is still not in issue, the plaintiffs' submissions on remand now do place evidence in the record proving that the INS did request, and that Masonry Masters did provide, documentation concerning its ability to pay Del Cid. See Exhibits A–D attached to Plaintiffs' Cross–Motion for Summary Judgment. Therefore, the inconsistency of the two results now becomes an important issue in this case.

that an agency may not make simultaneously inconsistent decisions without providing some explanation for the inconsistency. *See, e.g., Hatch v. FERC,* 654 F.2d 825, 834–35 (D.C.Cir.1981) (agencies must provide reasoned explanation for failure to adhere to their own past rulings and practices); *Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 852 (D.C.Cir.1970) ("an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored"), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971); *Ohio Fast Freight, Inc. v. United States,* 574 F.2d 316, 319 (6th Cir.1978) (administrative agency must either conform its actions to its own previous general policies and precedents or explain its departure from them).

On this record, there is no doubt that Masonry Masters' ultimately unsuccessful application on Perdomo's behalf and its successful application on Del Cid's behalf were the same in every material respect. Both forms were filed on the same date in 1979 by the same employer for the same position of bricklayer; both forms contained almost identical information; and the DOL issued the requested certification for both applications on the same date in 1982.[6] Moreover, other DOL forms submitted on the same date in 1979 indicated that Del Cid and Perdomo were both El Salvador citizens, where they were bricklayer apprentices, and that Del Cid had 1.5 years, and Perdomo 2.5 years, of experience as a bricklayer.[7] On the same date in 1984, Masonry Masters submitted nearly identical sixth-preference visa petitions to the INS for Perdomo and Del Cid, and each petition in Item 25 put the INS on notice by cross-referencing the other, separately-filed petition.[8] Again on the same date later in 1984, the INS sent Masonry Masters identical letters requesting further information.[9] Providing the same type of information for both applications, Masonry Masters responded by sending the INS two letters (based on W–2 forms) summarizing its annual payments and deductions from 1979 to 1983 for Perdomo and from 1980 to 1983 for Del Cid.[10] On July 18, 1985 the INS approved the visa petition for Del Cid but, the very next day, without explaining the inconsistency, the INS rejected Perdomo's petition, concluding that Masonry Masters had not established its ability to pay the offered wage.[11]

. As the foregoing demonstrates, there is no genuine issue of material fact foreclosing the conclusion that the applications and supporting documentation on behalf of Perdomo and Del Cid were, for all practical purposes, identical. By reaching diametrically opposed results on the two applications without explaining the patent inconsistency,[12] the defendants acted arbitrarily

**6.** *Compare* Perdomo Certification Application (attached as Exhibit A to Defendants' Motion for Summary Judgment) *with* Del Cid Certification Application (attached as Exhibit A to Plaintiffs' Cross–Motion for Summary Judgment).

**7.** *Compare* Del Cid Statement of Qualifications (attached as Exhibit 4 to Plaintiffs' Reply) *with* Perdomo Statement of Qualifications (attached as Exhibit 5 to Plaintiffs' Reply).

**8.** *Compare* Perdomo Petition (Adm. Rec. at 86–87) *with* Del Cid Petition (attached as Exhibit B to Plaintiffs' Cross–Motion for Summary Judgment).

**9.** *Compare* Perdomo Letter from INS (Adm. Rec. at 85) *with* Del Cid Letter from INS (attached as Exhibit C to Plaintiffs' Cross–Motion for Summary Judgment).

**10.** *Compare* Perdomo Letter from Masonry Masters (Adm. Rec. at 81) *with* Del Cid Letter from Masonry Masters (attached as Exhibit D to

Plaintiffs' Cross–Motion for Summary Judgment).

**11.** *Compare* Del Cid Petition Approval Notification (attached as Exhibit E to Plaintiffs' Cross–Motion for Summary Judgment) *with* Perdomo Petition Denial Notification (Adm. Rec. at 68–69). Del Cid has since received his immigrant visa and has been working for Masonry Masters for over $10 per hour. *See* Copy of Del Cid Visa and Virgil Longo Affidavit (attached as Exhibits F and G to Plaintiffs' Cross–Motion for Summary Judgment).

**12.** The defendants feebly attempt to explain the inconsistency by stating that Masonry Masters submitted Del Cid's W–2 forms, which indicated that he was paid $10 per hour in 1979, but that the W–2 forms submitted on Perdomo's behalf during the administrative appeal showed that he had only been paid $7.50 per hour in 1979. Defendants' Opposition at 9. However, there is no support in the record for the assertion that

and abused their discretion. *See Contractors Transport Corp. v. United States*, 537 F.2d 1160, 1162 (4th Cir.1976) ("Patently inconsistent application of agency standards to similar situations lacks rationality and is arbitrary.").

### III. Conclusion

The prevailing wage for bricklayers like Perdomo was $7.50 per hour in 1979, and Masonry Masters has clearly demonstrated its ability to pay Perdomo that wage. Moreover, without explanation, the INS acted completely inconsistently in approving Masonry Masters' visa petition for Del Cid but at the same time rejecting what was, in effect, an identical petition supported by the same underlying documentation for Perdomo. On these alternative grounds, the Court holds that INS abused its discretion. Thus, the Court will grant summary judgment for the plaintiffs and will order the defendants to approve the sixth-preference visa petition filed by Masonry Masters and Perdomo.

An Order in accordance with the foregoing Opinion will be issued of even date herewith.

---

Masonry Masters *ever* submitted *any* W–2 forms for Del Cid's application, and the defendants' opposition—apparently by oversight—fails to cite any part of the administrative record that

could reasonably support their contention. In any event, the defendants have been unable to provide an explanation for their inconsistent rulings on Masonry Masters' two visa petitions.