OKLAHOMA AEROTRONICS, INC.

v.

UNITED STATES of America,
et al., Appellants.

OKLAHOMA AEROTRONICS,
INC., Appellant,

v.

UNITED STATES of America, et al.

Nos. 90–5222, 90–5253.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 23, 1991.

Decided Sept. 13, 1991.

John J. McMackin, Jr., with whom June E. Edmondson, Washington, D.C., was on the brief, for appellant in 90–5253 and appellee in 90–5222.

Edith S. Marshall, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees in 90–5253 and appellant in 90–5222.

Before BUCKLEY, WILLIAMS and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

Opinion concurring and dissenting filed by Circuit Judge WILLIAMS.

RANDOLPH, Circuit Judge:

In 1981, Oklahoma Aerotronics, Inc. filed an application for attorney's fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, after winning a lawsuit against the Small Business Administration. Nine years later, the district court awarded OAI fees and expenses, together with an enhancement for delay in payment. The court refused, however, to award interest on the fees and expenses due. OAI and the government bring cross-appeals from this decision.

OAI argues two points. It contends that the district court erred in reducing a portion of its fee claim by two-fifths and by refusing to award it interest on fees running from the date the fees were incurred to the time of the award. We reject both claims, finding the district court's actions within its discretion. The government argues that the court erred in concluding that the delay between the time of OAI's fee application and the time of the award amounted to a "special factor" under EAJA. We disagree and uphold the court's treatment of this delay as a factor warranting an increased award. The government also contends the district court erred by compensating OAI for the delay in the payment of its expenses, and by enhancing certain fees for the period prior to EAJA's effective date. We agree with both arguments, and reverse the district court's order on these points.

I

OAI is an electronics design and manufacturing firm that competes for government contracts in the defense industry. In 1971 OAI became a participant in the Small Business Administration's procurement assistance program, established under section 8(a) of the Small Business Act of 1953, 15 U.S.C. § 637(a). The SBA terminated OAI from the program on March 22, 1978, after several procedural irregularities, which became the basis of this lawsuit. OAI sued the SBA on May 3, 1978. The district court granted summary judgment against OAI in July of 1980. On August 27, 1981, this court reversed, finding that the SBA had no rational basis for its decision and ordering that OAI be restored to the program as an incumbent. *Oklahoma Aerotronics,*

*Inc. v. United States,* 661 F.2d 976, 978 (D.C.Cir.1981). On October 28, 1981, the district court, on remand, ordered OAI reinstated in the section 8(a) program.

Between the time of our decision and the order of the district court, EAJA took effect. EAJA applied to all civil actions pending on its effective date, October 1, 1981, and thus applied to this case. Pub.L. No. 96–481, § 208, 94 Stat. 2321, 2330 (1980). EAJA entitles a party prevailing against the government in a case in which the government's position was not substantially justified to an award of attorney's fees and expenses, unless special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1)(A). Attorney's fees may not, however, be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a "special factor" warrants a higher fee. 28 U.S.C. § 2412(d)(2)(A).

On November 25, 1981, OAI filed an application for fees under the Act. Briefing on the application was completed in March 1982. The application then remained pending before a district judge without action for almost eight years. The record does not reveal the reason for the district judge's neglect. On August 8, 1989, the Chief Judge of the district court—to whom the case had not been assigned—ordered the parties to report on the status of the case. The parties filed a joint response and the Chief Judge set a briefing schedule. The case was reassigned on March 14, 1990, to Judge Gesell, who promptly issued a memorandum order on March 28, 1990, holding the SBA liable for attorney's fees and expenses and prescribing the method by which these items were to be calculated.

The government does not contest the district court's findings that OAI was the prevailing party in the underlying lawsuit, and that the government's position had not been substantially justified. The court determined that OAI should be compensated for the hours its attorneys expended in litigating the merits. However, the court found compensable only three-fifths of the hours OAI claimed for work on the fee applications. In the court's opinion, the

total amount of hours OAI's attorneys devoted to this matter "reflected considerable unnecessary work." In addition, the court awarded OAI compensation for its expenses, including time billed by paralegals. As to the delay, the district court ruled that this warranted "an additional increase based on the special factor of delay for all attorney hours reasonably claimed" and for expenses. The court rejected OAI's request for an award of interest.

OAI recalculated its fees using the method ordered by the district court, and the court adopted these new calculations in an order issued on May 14, 1990. Under the district court's formula, all the time OAI billed at rates below $75 per hour was accepted at face value. No time billed prior to 1981 would be compensated at a rate of more than $75 per hour before adjusting for inflation. The court enhanced these fees by the percentage increase in the cost of living from the month the hours were billed through June 1989. The court also enhanced paralegal fees and other expenses using the same formula. All compensable attorney time billed at $75 per hour or more was calculated at the rate of $75 per hour. That amount was then enhanced by 36.5 percent, to reflect the increase in the cost of living between 1981 and June 1989. This produced an hourly rate of $102.38 per hour for all the compensable time billed by OAI's attorneys after 1981. The court refused to grant an enhanced compensation for the period after June 1989 on the ground that delay after that point was reasonable and therefore not a special factor under EAJA. As a result, the district court awarded OAI $295,720.17, rather than the $631,519.44 OAI requested.

## II

### A

■ We first consider OAI's challenge to the district court's decision to award fees for only three-fifths of the hours billed by OAI's attorneys for work on the fee applications. OAI protests that its lawyers worked diligently to cover all the bases necessary to obtain fees. That may be.

But there is a point at which thorough and diligent litigation efforts become overkill. The district court must disallow claims for "excessive, redundant, or otherwise unnecessary" charges, *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Action on Smoking and Health v. Civil Aeronautics Bd.*, 724 F.2d 211, 221 (D.C.Cir.1984), and the determination of how much to trim from a claim for fees is committed to the court's discretion. *See Pierce v. Underwood*, 487 U.S. 552, 571, 108 S.Ct. 2541, 2553, 101 L.Ed.2d 490 (1988).

As an example of excessive billing on the fee issue, the district court cited the time OAI's attorneys spent on a 1989 memorandum updating the points and authorities. OAI requested $32,000 for 266 hours of attorney time and 74 hours of paralegal time for work on the memorandum and a reply. This was in addition to the $51,000 OAI sought for work done earlier on attorney's fees issues while the case was languishing in the district court. The earlier work included a 68–page memorandum and 42 pages of affidavits in support of OAI's supplemental fee application, as well as the three briefs OAI filed on its original application. OAI also filed two reply memoranda totalling 34 pages in support of its supplemental application, along with two amendments to the application.

Repetition may be an effective form of argument, but OAI overdid it. We have no doubt that OAI could have effectively made its points in far less than the 169 total pages of legal argument it presented to the district court. OAI of course was free to file whatever volume of materials the rules allowed. The question is whether the SBA should be charged for all of the company's efforts. In finding that OAI could have made its case more efficiently, and in reducing the chargeable hours by 40 percent, the district court did not abuse its discretion.

OAI also contends that its claim is high, in part because it took eight years to get a ruling on its fee applications, and that at least some of this needless delay was the government's fault. OAI points to the district court's statement that "the government bears some responsibility for delay." OAI makes too much of this. There is no evidence in the record that the government tried to prolong the fee proceedings. The examples OAI cites, such as the government's motion for bifurcation of liability and amount issues, do not reflect an attempt to cause delay. The district judge to whom this case was originally assigned is to blame for that. The government as a litigant had the same influence on the speed with which the first district judge ruled as did OAI. We do not read the district court's statement as a finding to the contrary.

## B

■ OAI's principal contention is that the district court erred in refusing to award interest from the date OAI incurred attorney's fees and expenses until the date of the award. The issue arises in the following context. When OAI submitted its application for attorney's fees and expenses in November 1981 it sought a total of $150,124.43. OAI did not then seek interest, although it had been incurring fees and expenses for about four years, since 1977. In March 1984, OAI filed a supplemental application, asking for an additional $45,774.50 as fees and expenses. In this filing, OAI also requested a "95 percent upward adjustment in the principal amount sought ('lodestar')" as compensation for delay "between the time the fee and expense obligations were incurred and the time of eventual payment by the government." Joint Appendix 122. In its accompanying memorandum, OAI explained that it had derived the 95 percent figure by using the adjusted prime rate during the period (the rate ranged from 6 percent to 20 percent), compounded quarterly. This, OAI claimed, would reimburse it for the effects of inflation and for its loss of the use of the money it had paid its attorneys during the litigation. After two amendments to this supplemental application, OAI filed an updated memorandum in November 1989 pursuant to the district court's order. In this filing OAI reiterated its request for interest from the date the fees and expenses were in-

curred and sought a grand total of $593,-906.90, more than $400,000 of which represented interest. OAI objects to the district court's refusal to grant the request.

OAI's position is that "reasonable" fees and expenses of attorneys under EAJA (28 U.S.C. § 2412(d)(2)(A)) must include interest from the date the attorney billed for the work until the date the government complies with an order to pay the prevailing party. As OAI reads EAJA, no "special factor" need be found under subsection (d)(2)(A).[1] According to OAI, when the delay is other than *de minimis* and not caused by the party seeking fees, interest must be granted in order for the award to be considered "reasonable." Otherwise, the prevailing party will not be fully compensated. A dollar received now, OAI points out, is worth more than a dollar received later. This is true regardless of whether there is inflation. Because payment is delayed, OAI loses the use of money. Interest compensates for that loss and for the loss in purchasing power caused by inflation, which is a component of interest. *See Library of Congress v. Shaw*, 478 U.S. 310, 322 n. 7, 106 S.Ct. 2957, 2965 n. 7, 92 L.Ed.2d 250 (1986).

The first question is whether an award of attorney's fees can be considered "reasonable" even if it does not fully compensate the party for its opportunity costs between the time the fees and expenses are incurred and the time the court issues its fee award. In answering this question we begin with the Supreme Court's opinion in *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). Justice Scalia, in a portion of his opinion joined by four other Justices, held for the Court that the amount of an attorney's fee award under EAJA is to be reviewed under an "abuse-of-discretion standard." *Id.* at 571,

108 S.Ct. at 2553. This necessarily means that district courts have leeway in determining what constitutes a "reasonable" fee award. In other words, a range of possible awards will be acceptable in most cases. As Justice Scalia wrote earlier in his opinion, the "abuse-of-discretion standard" permits "flexibility." *Id.* at 562, 108 S.Ct. at 2548. So does the expansive term "reasonable."

It is also significant that decisions arising under fee-shifting statutes other than EAJA do not interpret "reasonable" attorney's fee in the manner OAI urges here. The Court spoke to the issue most directly in *Library of Congress v. Shaw*, which interpreted Title VII of the Civil Rights Act of 1964. The Court there held that "[t]here is no basis for reading the term 'reasonable' as the embodiment of a specific Congressional choice to include interest as a component of attorney's fees...." 478 U.S. at 320, 106 S.Ct. at 2964. OAI directs us to the holding in *Missouri v. Jenkins*, 491 U.S. 274, 282, 109 S.Ct. 2463, 2468, 105 L.Ed.2d 229 (1989), that "an enhancement for delay in payment is, where appropriate, part of a 'reasonable attorney's fee'" under the Civil Rights Act, 42 U.S.C. § 1988. However, the "enhancement" for delay awarded in *Jenkins*, which the Court sustained, was in the nature of an adjustment for inflation. As compensation for delay, the district court had granted attorney's fees based on hourly rates prevailing at the time of its award, rather than on the lower rates in effect years earlier when the attorneys had performed the work. 491 U.S. at 277, 109 S.Ct. at 2465. Far from holding that interest was required, the Court merely ruled that "an appropriate adjustment for delay in payment—whether by application of current rather than historic hourly rates or otherwise—is within the contem-

---

**1.** Under 28 U.S.C. § 2412(d)(2)(A), "fees and other expenses" are:

the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and qual-

ity of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and (ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.).

plation of the statute." *Id.* at 284, 109 S.Ct. at 2469. The only "otherwise" suggested in the Court's opinion is contained in its quotation of *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 716, 107 S.Ct. 3078, 3082, 97 L.Ed.2d 585 (1987), stating that courts have also "recognized the delay factor" by "adjusting the fee based on historic rates to reflect its present value," which again describes an adjustment for inflation, not interest. 491 U.S. at 282, 109 S.Ct. at 2468.

Our decisions in *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1328–29 (D.C.Cir. 1982), and *Copeland v. Marshall (Copeland III)*, 641 F.2d 880, 893 (D.C.Cir.1980), which were not decided under EAJA, are to the same effect. While both decisions recognized, as did the Supreme Court in *Jenkins*, that delay may be taken into account in determining what amounts to "reasonable" attorney's fees, neither even hinted that interest must be awarded. *Concerned Veterans* stated that "[n]o precise formula is available to measure the delay factor," and that if the award is "based on present hourly rates a delay factor has implicitly been recognized and no adjustment for delay should be allowed." 675 F.2d at 1328–29. These statements may be subject to the criticisms that interest *is* a formula available for measuring the cost of delay and that an award on the basis of current rates, even if it does account for inflation, does not take into consideration the time value of money. Still, the point remains that neither *Concerned Veterans* nor *Copeland III*, upon which OAI relies, held that an attorney's fee award cannot be considered "reasonable" unless it includes an enhancement for delay determined through an interest calculation.

OAI's argument that an interest calculation is the most accurate way to measure the real cost of delay may be good economics. But if Congress had wanted to bind the courts in the manner OAI suggests, if it had intended to mandate pre-award or pre-payment interest on fees and expenses, one would have expected EAJA to refer to interest, to specify the rate to be used, to indicate whether compounding should be annual, quarterly or daily, and to designate when interest should start running. No such directions are contained in the statute. This is in marked contrast to the manner in which Congress dealt with delays in payment caused by the government's appeal of an award. Subsection (f), added in 1985, expressly provides that when the government appeals an award under EAJA, "interest shall be paid on the amount of the award as affirmed" at the rate set forth in 28 U.S.C. § 1961(a). 28 U.S.C. § 2412(f).

In view of Congress' silence about the matter it is not surprising that our decisions under EAJA do not support OAI's view. While we have adopted a number of different approaches to compensating parties for delay, we have never held that EAJA generally permits, let alone requires, interest. *Wilkett v. ICC*, 844 F.2d 867, 876 (D.C.Cir.), *reh'g denied*, 857 F.2d 793 (1988), held that enhancement of an award for delay is permitted only when the delay is unusual, that is, when it can be considered a "special factor" under section 2412(d)(2)(A) of EAJA. The court compensated for the delay in *Wilkett* by awarding fees at the attorney's actual billing rate, which was slightly higher than the EAJA cap adjusted for cost of living increases. In *Hirschey v. FERC*, 777 F.2d 1, 5 (D.C.Cir.1985), the court compensated for delay by awarding a fee based on the adjusted EAJA rate at the time of the decision rather than when the services were rendered. (Cost of living adjustments to the $75–per–hour cap are made from the statute's effective date to the point when the services are rendered. *See Wilkett*, 844 F.2d at 875.) In *ASH*, 724 F.2d at 219–20, the court enhanced the lodestar by 10 percent to compensate for a four-year delay.[2]

---

2. OAI also argues that the court's statement in *Concerned Veterans* that an award for delay must be "factually supported" embodies the principle that an award for delay must cover the economic cost of delay. But OAI's reading is not supported by the opinion. The court's reference was to the need to establish that the delay was neither negligible nor caused by the party claiming fees; it did not refer to the economic cost of delay.

OAI's rejoinder is that this case is different from its predecessors, most particularly *Wilkett,* and that we are therefore not constrained by *Library of Congress v. Shaw,* which held that the government is not liable for interest in the absence of an express waiver of sovereign immunity. OAI contends that because the Small Business Act provides that the SBA may "sue and be sued," 15 U.S.C. § 634(b), it falls under the exception to *Shaw* described in *Loeffler v. Frank,* 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988). *Loeffler* held that a sue-or-be sued clause may amount to a waiver of sovereign immunity from awards of interest "when such awards are an incident of suit." 486 U.S. at 555, 108 S.Ct. at 1969.

OAI's position appears to be that we would have awarded interest in our earlier EAJA cases had we not been constrained by sovereign immunity. But *Hirschey, ASH* and *Concerned Veterans,* all of which were decided before *Shaw,* did not even mention sovereign immunity. *Wilkett,* the only case that did discuss the doctrine, cannot be distinguished on the ground OAI proposes. *Wilkett* held that the rule in *Shaw* did not apply to enhancements for delay in payment of fees under EAJA, even if the enhancements are in the nature of inflation adjustments. 844 F.2d at 876.[3] Such discretionary allowances are made under EAJA's "special factor" clause. *Shaw* therefore did not affect the court's award in *Wilkett,* and it did not affect the district court's award here. The SBA's sue-and-be-sued clause added nothing to the scope of the district court's authority under EAJA. The existence of such a clause does not transform an otherwise "reasonable" award into an unreasonable one, and in this case it did not require the court to award interest to OAI.

### C

██ The government raises a different objection to the district court's treatment

of *Wilkett.* It contends that the court abused its discretion because delay attributable to the judiciary is not a "special factor" justifying an enhancement. We find the government's argument unpersuasive. *Wilkett* explicitly held that "delay may be regarded as a 'special factor' under the EAJA" without differentiating among possible causes of delay. 844 F.2d at 876. There the prevailing party in an agency review proceeding filed a fee application only to have it lie dormant in the clerk's office for almost four years. *Id.* at 869. The court compensated a petitioner for a similar delay caused by the clerk's office in *Hirschey,* 777 F.2d at 5. There is no reason why judicial delay should be treated differently under EAJA than the delay in *Wilkett* and *Hirschey.* It is true that a "special factor" under EAJA may not be "of broad and general application," *Pierce v. Underwood,* 487 U.S. at 573, 108 S.Ct. at 2554, and that there will be some delay in almost every case. But what makes the factor "special" is not simply delay, but unusual delay. *Wilkett,* 844 F.2d at 876. In this case, the eight-year hiatus between the filing of the fee application and the decision plainly qualifies.

### D

██ Two issues remain. The first concerns the district court's cost-of-living enhancement of OAI's expenses to compensate for delay. The government claims that sovereign immunity barred this part of the court's award. In deciding that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* did not authorize interest on the "reasonable attorney's fee" award, *Shaw* stated the rule succinctly: "In the absence of express Congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award." 478 U.S. at 314, 106 S.Ct. at 2961. Shaw contended that interest could

---

**3.** The court in *Wilkett* found it significant that the Supreme Court "said, after its decision in *Shaw:* 'We do not suggest ... that adjustments for delay are inconsistent with the typical fee-shifting statute.'" 844 F.2d at 876, quoting *De-*

*laware Valley Citizens' Council,* 483 U.S. at 716, 107 S.Ct. at 3082. The Court in *Delaware Valley* referred to cases awarding enhancements for delay under the attorney's fees provisions of the Clean Air Act and the Civil Rights Act.

be distinguished from a "delay factor" calculated by adjusting the lodestar. The Court responded that "whether the loss to be compensated by an increase in a fee award stems from an opportunity cost or from the effects of inflation, the increase is prohibited by the no-interest rule." 478 U.S. at 322, 106 S.Ct. at 2965. As we have indicated, *Wilkett* distinguished *Shaw* on the ground that EAJA expressly consented to an increase in an attorney's fee award to compensate for inflation or in view of a "special factor." 844 F.2d at 876. *Wilkett* therefore concluded that EAJA met the Court's requirement of an express waiver.

The government's sovereign immunity argument here is simple: *Shaw* prohibits compensation for delay without an express waiver; *Wilkett* found such a waiver in EAJA but the waiver in EAJA extends only to attorney's fees, not expenses.[4] OAI answers that *Shaw* has nothing to do with this case because the SBA may "sue and be sued." 15 U.S.C. § 634(b)(1). Under OAI's view the relevant waiver of sovereign immunity is provided by the Small Business Act, not EAJA. OAI relies on *Loeffler v. Frank,* which held that the sue-and-be-sued clause of the Postal Reorganization Act, 39 U.S.C. § 401(1), waived the government's sovereign immunity with respect to an award of prejudgment interest as authorized by sections 717(d) and 706(g) of Title VII. 42 U.S.C. §§ 2000e–16(d), 2000e–5(g). The Court made clear, however, that the sue-and-be-sued clause allowed claimants against the postal service to recover interest only "to the extent that interest is recoverable against a private party as a normal incident of suit," 486 U.S. at 557, 108 S.Ct. at 1970, and Loeffler's recovery rested expressly on the fact that "Title VII authorizes interest awards as a normal incident of suits against private parties...." *Id.* at 558, 108 S.Ct. at 1971.

If the sue-and-be-sued clause in the Small Business Act is to serve as a waiver of sovereign immunity here, as OAI contends it should, it can only be because an award

of attorney's fees (which is of course a prerequisite to an award of interest) is a "normal incident of suits against private parties." Yet this is manifestly not the case. Rather, "[i]t is well established that, under the 'American Rule,' 'the prevailing litigant is ordinarily not entitled to collect a reasonable attorney's fee from the loser.' " *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 561, 106 S.Ct. 3088, 3096, 92 L.Ed.2d 439 (1986), quoting *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). The Court in *Delaware Valley* described fee-shifting provisions as an exception to the American Rule, which matches Congress's description of EAJA. *See* H.R.REP. NO. 1418, 96th Cong., 2d Sess. 6 (1980), U.S.Code Cong. & Admin.News 1980, pp. 4953, 4957, 4958.

Furthermore, OAI was a "prevailing party" within EAJA's meaning (28 U.S.C. § 2412(b)) only under the Administrative Procedure Act, 5 U.S.C. § 702. 661 F.2d at 977. OAI obtained no relief under the Small Business Act, or any substantive statute, such as Title VII, that might entitle it to attorney's fees. *Cf. Loeffler,* 486 U.S. at 558, 108 S.Ct. at 1971. The APA does not waive sovereign immunity for attorney's fees, and it contains no exception to the American Rule. In order to collect OAI must look to EAJA, a point it does not dispute. OAI's victory, for example, would not have made it eligible for an award if the government's position had been "substantially justified," as EAJA uses the phrase. 28 U.S.C. § 2412(d)(1)(B). Furthermore, OAI agrees that it can recover no more than $75 per hour (with inflationary adjustments) for the work of its attorneys because of the cap set by EAJA. The scope of an agency's liability under EAJA, in short, does not depend on whether it could sue or be sued. EAJA controls awards of attorney's fees and expenses regardless of whether the statutes other-

---

**4.** Section 2412(d)(2)(A) provides that *"attorney fees* shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor,

such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee...." (emphasis added).

wise waive the agency's sovereign immunity. OAI is therefore bound by the terms of EAJA, which authorize only the attorney's fee portion of awards to be enhanced for special factors such as unusual delay.

■ The final issue is whether, as the government claims, the district court erred by awarding an enhancement for delay for the period after work was performed but prior to October 1, 1981, EAJA's effective date. As mentioned previously, for all attorney time billed at rates below $75 per hour the court awarded an enhancement based on the percentage increase in the cost of living from the time the work was performed through June 1989. This formula applied to a substantial number of hours billed before October 1, 1981.[5] The government's objection is that before EAJA became effective, the SBA was not liable for fees, and its failure to pay them therefore did not constitute compensable delay. OAI argues that the district court's method is permissible because it is an effort to preserve the economic value of the EAJA award, though it stresses that interest would do the job better. This misses the point. The rationale for awarding an enhancement in this case is that payment of OAI's fees was delayed an unusually long time, long enough to qualify as a "special factor." But payment was not delayed before EAJA took effect; during that period no payment was due. The district court therefore abused its discretion in awarding an enhancement for delay for the period prior to the effective date of EAJA. Fees for hours billed before October 1, 1981, may be enhanced only for delay after that date.

\* \* \*

We affirm the district court's reduction of OAI's hours, its conclusion that the delay in these cases constituted a "special factor" under 28 U.S.C. § 2412(d)(2)(A), its enhancement of OAI's fees to compensate for that delay, and its award of expenses, including paralegal time. These are all proper exercises of discretion under *Pierce.* We reverse the court's enhancement of expenses, and its enhancement of fees for work performed prior to October 1, 1981, as an abuse of discretion. The case is remanded.

STEPHEN F. WILLIAMS, Circuit Judge, concurring and dissenting:

The delay in award of fees was, all hands agree, extraordinary. Nothing happened for more than seven years—from the completion of briefing on the fee application in March 1982, until the Chief Judge took command of the matter in August 1989. Under our decision in *Wilkett v. ICC,* 844 F.2d 867 (D.C.Cir.), reh'g denied, 857 F.2d 793 (D.C.Cir.1988), the delay is plainly a "special factor" within the meaning of the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(2)(A), entitling the applicant to compensation. See Maj.Op. at 1349–50. Because I believe that the suitable method of compensating for delay in payment is the award of interest, as in the world at large, I cannot agree that it is enough merely to adjust the fee for inflation.

I start at a point slightly different from the court's consideration of whether § 2412(d)(2)(A)'s reference to "reasonable attorney fees" entitles the fee applicant to *interest* for delay. As I read the cases, they are even more adverse to the fee applicant than the court suggests. *Library of Congress v. Shaw,* 478 U.S. 310, 321–23, 106 S.Ct. 2957, 2965–66, 92 L.Ed.2d 250 (1986), holds that federal sovereign immunity is so hostile to "interest" liability that a statutory provision for a "reasonable" attorney's fee is not enough to authorize *any* compensation for delay, even the rather incomplete compensation afforded by an inflation adjustment. Compare *Missouri v. Jenkins,* 491 U.S. 274, 280–82, 109 S.Ct. 2463, 2467–68, 105 L.Ed.2d 229 (1989) (similar terms are adequate to authorize court to require a *state* to compensate for delay, notwithstanding the Eleventh Amendment).

---

**5.** The government claims that OAI, which calculated the amount owed based on the district court's formula, applied this formula to all the work it performed before the effective date of the EAJA, including work originally billed at over $75 per hour. OAI does not dispute this.

In *Wilkett*, however, this court held that an "exceptional" delay, so long as it is not attributable to negligence of the prevailing party, may justify an increase in the fee award. 844 F.2d at 876.[1] *Wilkett*'s route to that result is far from clear. The "special factor" clause of § 2412(d)(2)(A)(ii) merely *releases* the $75 *cap* that it itself imposes on recovery of "reasonable" fees. Since under *Shaw* compensation for delay does not even qualify as "reasonable", it is hard to see how refinements in a clause that *limits* payment of reasonable fees can allow the applicant *more* compensation. *Wilkett* is, however, circuit law, and all members of the panel agree in faithfully adhering to it.[2] *Wilkett* being a given, we must apply it as best we can.

*Wilkett* itself sheds no real light on how to calculate compensation for delay. There the applicant requested $85 an hour for work billed in 1982–83 and recovered five years later. 844 F.2d at 876–77. We upheld that exceedance of the cap, without discussing any general principles as to how to compensate for delay, saying only that "[t]he small increase in the adjusted cap that Wilkett has requested for this work is amply justified by the exceptional delay, through no fault of his own, in our consideration of his application." *Id.* (The delay was due to a clerical error in the office of the court's clerk. See *id.* at 870.)

Thus the computational issue seems to me open. Why not address delay in the ordinary way? A person delayed in the collection of funds suffers two losses: first, income accruing from use of the funds, which he loses regardless of inflation; second, the erosion of the value of the currency through inflation. The interest rate compensates a lender for both. (More precisely, it compensates for the expected value of both. See *Association of American Railroads v. ICC*, 846 F.2d 1465, 1474

n. 4 (D.C.Cir.1988).) I see no reason to compensate for only one.

The court quite rightly notes that district court decisions in this area are reviewable for "abuse of discretion". See Maj.Op. at 1348. But while the Supreme Court adopted that standard for review of the computation generally, *Pierce v. Underwood*, 487 U.S. 552, 571, 108 S.Ct. 2541, 2553, 101 L.Ed.2d 490 (1988), it still proceeded to declare general principles as to the meaning of "special factor". See *id.* at 571–74, 108 S.Ct. at 2553–55. Where an issue is susceptible of principled analysis, it seems to me to be the reviewing court's responsibility to find and state the principles. Not to do so leaves district courts uncertain and litigants exposed to unnecessary judicial discretion.[3]

Adopting the principle that interest is the appropriate device still leaves problems, to be sure. First, there is selection of a rate. EAJA's only explicit interest provision, 28 U.S.C. § 2412(f), incorporates the formula of 28 U.S.C. § 1961(a), and thus supplies at least an analogy. The issue is in any event paralleled by the need to choose an index when the court adjusts only for inflation.

Second, if attorneys have a practice of anticipating some delay and therefore incorporating an implicit interest figure in their fees, allowance of interest on top would result in double counting. So a court must pay close attention to the evidence of private fees from which "lodestar" rates are drawn. Again the problem applies even where compensation for delay is limited to an inflation adjustment.

Third, the court must be careful to allow compensation only for the egregious portion of the delay. If a fee is charged and paid in October 1981 at $75 an hour, and recovered in 1990, it cannot be correct to treat the delay between October 1981 and (say) March 1982 as "special". According-

---

**1.** This compensation is in addition to and different from the adjustment of the cap for inflation between the date of EAJA's enactment and the date the fees were incurred, authorized by § 2412(d)(2)(A)'s explicit authorization of an adjustment based on "an increase in the cost of living". See *Wilkett*, 844 F.2d at 874–75.

**2.** Thus there can be no compensation for delay in payment of expenses, an award not covered

by the special factor provision. See Maj. Op. at 1350–51.

**3.** The court's opinion, rightly, does not *bar* a district court from awarding interest for extraordinary delay.

ly, even if the government pays only in 1991, there should be no compensation for an initial period of *un* special delay, running from incurrence of the fee to the date when delay became unreasonable. Again, the problem applies even where compensation consists only of an inflation adjustment. Cf. Maj.Op. at 1346 (noting that district court denied compensation for delay occurring after June 1989, thus effectively compensating only for egregious portion of delay).

Finally, the appellate court must not apply an interest rule in a way that defeats the district court's exercise of its discretion. Although the district court here cut down only the applicant's request for fees on the fee litigation itself, see Maj.Op. at 1346, it refused to make any cuts in the main application. That refusal may have been influenced by a sense that the compensation for delay was rather miserly. Accordingly, I would remand to the district court for it to award interest and to make such adjustments in the total award as its sound discretion counselled.