**MASONRY MASTERS, INC.**
**and Rigoberto Perdomo,**
**Appellants,**

v.

**Alan C. NELSON and Janet Reno,**
**Attorney General, Appellees.**

**No. 94–5404.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 24, 1996.

Decided Feb. 7, 1997.

James H. Lesar, Washington, DC, argued the cause, for appellants. With him on the brief was Susan Au Allen. Paul S. Allen entered an appearance.

Keith V. Morgan, Assistant United States Attorney, argued the cause, for appellee. With him on the brief were Eric H. Holder, Jr., United States Attorney, and R. Craig Lawrence, Assistant United States Attorney, Washington, DC.

Before: EDWARDS, Chief Judge, HENDERSON and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

Concurring statement filed by Circuit Judge HENDERSON.

TATEL, Circuit Judge:

Authorizing awards of attorney's fees to parties prevailing in litigation against the federal government, the Equal Access to Justice Act ("EAJA") allows courts to increase the statute's $75-per-hour rate to reflect changes in the cost of living since the Act's 1981 effective date. The question in this case is whether cost-of-living enhanced rates should be calculated separately for each year in which services were provided, or whether a single enhanced rate reflecting the increase in the cost of living from 1981 to the year in which the court approved the fee award should be applied to all services rendered throughout the litigation. Because the latter approach compensates for delay in payment, the functional equivalent of interest, and because the EAJA does not waive the govern-

ment's long-established immunity from awards of interest, we agree with the district court that cost-of-living enhancements must be calculated for each year in which services were performed.

## I

Following several years of litigation, the district court overturned the Immigration and Naturalization Service's denial of an immigrant visa petition filed by appellant Masonry Masters on behalf of one of its employees. *Masonry Masters, Inc. v. Thornburgh,* 742 F.Supp. 682 (D.D.C.1990). Masonry Masters then sought reimbursement for attorney's fees and expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (1994). That Act allows a prevailing party to recover reasonable attorney's fees and costs if the government's position was not "substantially justified," unless "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (1994); *Pierce v. Underwood,* 487 U.S. 552, 556, 108 S.Ct. 2541, 2545, 101 L.Ed.2d 490 (1988). The Act provides that

> The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A). Cost-of-living enhancements are calculated from 1981, the year the EAJA became effective. *Hirschey v. FERC,* 777 F.2d 1, 5 & n. 24 (D.C.Cir. 1985). Enhancements are based on the U.S. Department of Labor's Consumer Price Index. *Wilkett v. ICC,* 844 F.2d 867, 875 (D.C.Cir.1988).

The district court granted appellants' initial request for fees in January 1992, calculating the fee on the statutory base of $75 per hour. *Masonry Masters, Inc. v. Barr,* Civ. No. 86–0201, 1992 WL 13208 (D.D.C. Jan.9, 1992). Following additional briefing, the district court ruled that it would enhance the $75 rate according to the "historic" cost of living—i.e., for each year in which Mason-

ry Masters' attorneys rendered services, the $75 rate would be increased by the appropriate CPI for that year. *Masonry Masters, Inc. v. Barr,* Civ. No. 86–0201, slip op. at 6 (D.D.C. Aug. 13, 1992) ("*Masonry Masters II*"). An "historic" cost-of-living enhancement for work performed, for example, in 1988 produces an hourly rate of $98.53 ($75 plus $23.53, the increase in the cost of living from 1981 to 1988). *See* Pls.' Notice of Filing (Dec. 23, 1994), Ex. A.

Masonry Masters had requested fee enhancement according to the "current" cost of living, i.e., the increase in the cost of living from 1981 to 1992, the year in which the court initially approved the fee petition. The "current" approach yields an hourly rate of $119.63 ($75 plus $44.63, the increase in the cost of living from 1981 to 1992), which Masonry Masters argues should apply to *all* legal services rendered by its attorneys from 1985, when the suit was filed, through 1992. *See id.*

Rejecting the "current" rate, the district court acknowledged that using the "historic" enhancement meant that "services rendered by Plaintiffs' counsel in 1986 will not be compensated in 1991[sic] dollars." *Masonry Masters II,* slip op. at 6. The court also rejected Masonry Masters' request for fee enhancement under the EAJA's "special factors" provision. *Id.* at 5. Following several more rounds of filings on the appropriate method of calculating the cost-of-living enhancement, the district court entered a final order allowing in part and disallowing in part appellants' supplemental fee request. *Masonry Masters, Inc. v. Reno,* Civ. No.86–0201 (D.D.C. Oct. 25, 1994) ("*Masonry Masters III*").

## II

On appeal, Masonry Masters urges us to adopt the "current" cost-of-living enhancement to compensate for delay in payment for services rendered years earlier, claiming its lawyers have "lost approximately one-fifth of the present value of their labor through delay in the receipt of payment." Appellants' Br. at 20. Contending that compensation for delay is equivalent to interest, the Govern-

ment argues that "current" cost-of-living enhancements are barred by the long-standing rule prohibiting recovery of interest against the United States unless the government expressly waives its sovereign immunity. *See United States ex rel. Angarica v. Bayard*, 127 U.S. 251, 260, 8 S.Ct. 1156, 1160–61, 32 L.Ed. 159 (1888). According to Masonry Masters, the EAJA's cost-of-living provision amounts to just such a waiver. We review this purely legal issue *de novo*. *United States v. Wishnefsky*, 7 F.3d 254, 256 (D.C.Cir.1993).

The key to this case is the Supreme Court's decision in *Library of Congress v. Shaw*, 478 U.S. 310, 314–15, 106 S.Ct. 2957, 2961–62, 92 L.Ed.2d 250 (1986), an action arising under Title VII's fee-shifting provision, 42 U.S.C. § 2000e–5(k) (1994). To compensate counsel for a five-year delay in receiving payment for their services, the district court awarded a thirty percent enhancement to the "lodestar." Affirming, this court concluded that Title VII, by making the government liable for fees "the same as a private person," waived the Government's immunity against interest. *Shaw v. Library of Congress*, 747 F.2d 1469, 1475 (D.C.Cir. 1984). The Supreme Court reversed. Tracing the early history of the no-interest rule, the Court noted that "[f]or well over a century," it had "consistently ... recognized that federal statutes cannot be read to permit interest to run on a recovery against the United States unless Congress affirmatively mandates that result.... When Congress has intended to waive the United States' immunity with respect to interest, it has done so expressly." *Shaw*, 478 U.S. at 316–18, 106 S.Ct. at 2962–63. Pointing out that neither the statute nor its legislative history referred to interest, the Court concluded that Congress's decision to make the government liable "the same as a private person" waived the government's immunity from fees, not from interest on those fees. *Id.* at 319, 106 S.Ct. at 2964. Unpersuaded by the fee recipient's argument that the no-interest rule did not prohibit the award of compensation for delay, the Court stated that "[i]nterest and a delay factor share an identical function. They are designed to compensate for the belated receipt of money.... [They]

are functionally equivalent." *Id.* at 322, 106 S.Ct. at 2965.

■ *Shaw* controls the two basic issues in this case: whether fee enhancements based on the "current" cost of living amount to awards of interest; and, if so, whether the EAJA waives the federal government's immunity from such awards. The answer to the first question turns on the quite different effects produced by "historic" and "current" cost-of-living enhancements. Awards based on the cost of living for the year in which services were provided do no more than "update the [Act's] statutory rate" to compensate for inflation since the Act's 1981 effective date. *Perales v. Casillas*, 950 F.2d 1066, 1076 (5th Cir.1992). Such "historic" enhancements do not compensate for delay because "[p]rior to services being performed, there is no obligation to pay and no fee incurred...." *Chiu v. United States*, 948 F.2d 711, 720 (Fed.Cir.1991).

"Current" cost-of-living increases produce very different consequences. By using a CPI for a period of time extending beyond the actual provision of services, the "current" rate accomplishes more than "updat[ing] the [Act's] statutory rate;" it compensates for delay in payment. *Perales*, 950 F.2d at 1076; *see Chiu*, 948 F.2d at 720. To illustrate, the $97.20 "historic" rate for 1988 merely updates the $75 rate to account for increases in the cost of living since the Act's effective date. By comparison, applying the $119.63 "current" rate, i.e., the rate for 1992, to services performed in 1988 goes well beyond updating the statutory rate. The $22.43 difference between the two rates, as appellants candidly admit, "compensat[es] for delay." Appellants' Br. at 9, 10, 16; *see id.* at 12–13. And "compensation for delay," according to *Shaw*, is just another term for "interest"; they are "functionally equivalent." *Shaw*, 478 U.S. at 322, 106 S.Ct. at 2965–66. *See also Marcus v. Shalala*, 17 F.3d 1033, 1039 (7th Cir.1994) (by indexing EAJA attorney's fees at "current" rate, "district court's award included interest"); *Perales*, 950 F.2d at 1076; *Chiu*, 948 F.2d at 719.

Appellants argue that *Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229

(1989), compels a different conclusion. We disagree. Arising under 42 U.S.C. § 1988, *Jenkins* held that the Eleventh Amendment does not give states immunity from enhanced fees. *Jenkins* expressly distinguished the situation in this case, noting that the " 'no-interest rule' ... which is applicable to the immunity of the United States" was not at issue: "Outside the context of the 'no-interest rule' of federal immunity, we see no reason why compensation for delay cannot be included within § 1988 attorney's fee awards...." *Jenkins*, 491 U.S. at 281 n. 3, 109 S.Ct. at 2468 n. 3. Appellants nonetheless cite *Jenkins* for their argument that an "historic" cost-of-living adjustment "falls far short of providing the reasonable attorney's fee envisioned by Congress and fails to make the plaintiff whole." Appellants' Br. at 12; *see also Jenkins*, 491 U.S. at 283, 109 S.Ct. at 2469. Although economically sound, this purely policy argument is flatly inconsistent with *Shaw*'s plain language: " '[T]he immunity of the United States from liability for interest is not to be waived by policy arguments.... Courts lack the power to award interest against the United States on the basis of what they think is or is not sound policy.' " *Shaw*, 478 U.S. at 321, 106 S.Ct. at 2965 (quoting *United States v. New York Rayon Importing Co.*, 329 U.S. 654, 663, 67 S.Ct. 601, 605–06, 91 L.Ed. 577 (1947)).

■ The question, then, is does the EAJA expressly waive the government's immunity? Our three sister circuits that have considered this question since *Shaw* have ruled that it does not, and we agree. *Marcus*, 17 F.3d at 1039; *Perales*, 950 F.2d at 1076; *Chiu*, 948 F.2d at 720–21.

■ Because we must construe waivers of immunity strictly in favor of the sovereign, *Lane v. Pena*, —— U.S. ——, ——, 116 S.Ct. 2092, 2096, 135 L.Ed.2d 486 (1996), a waiver of sovereign immunity "is to be read no more broadly than its terms require." *Brown v. Secretary of the Army*, 78 F.3d 645, 649 (D.C.Cir.), *cert. denied sub nom. Brown v. West*, —— U.S. ——, 117 S.Ct. 607, 136 L.Ed.2d 533 (1996). As the Supreme Court held in *Shaw*, the no-interest rule adds "an added gloss of strictness" to the usual rules governing waiver of sovereign immunity.

*Shaw*, 478 U.S. at 319, 106 S.Ct. at 2964. Waivers of immunity from interest must be clearly stated in the language of the statute: "There can be no consent by implication or by use of ambiguous language.... The consent necessary to waive the traditional immunity must be express, and it must be strictly construed." *New York Rayon Importing Co.*, 329 U.S. at 659, 67 S.Ct. at 604.

Applying these principles, we think the EAJA's cost-of-living enhancement language falls far short of an unambiguous statutory waiver of immunity. The statute provides only that the $75–per–hour cap may be exceeded if an "increase in the cost of living ... justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). As to whether enhanced rates should be based on "historic" rates (which update the statutory rate) or "current" rates (the functional equivalent of interest), the Act is silent—a striking silence when compared to the explicit language Congress uses when it intends to waive the government's immunity from interest. In response to the Supreme Court's decision in *Shaw*, for example, Congress amended Title VII to provide that with respect to government employees, "the same interest to compensate for delay in payment shall be available as in cases involving nonpublic parties." 42 U.S.C. § 2000e–16(d) (1994). In a provision not at issue in this case, the EAJA itself contains specific language authorizing awards of interest against the government:

> If the United States appeals an award of costs or fees and other expenses made against the United States under this section and the award is affirmed in whole or in part, interest shall be paid on the amount of the award as affirmed. Such interest shall be computed at the rate determined under section 1961(a) of this title, and shall run from the date of the award through the day before the date of the mandate of affirmance.

28 U.S.C. § 2412(f) (1994). Because similarly unambiguous waiver language appears nowhere in section 2412(d)(2)(A), we conclude that the EAJA waives only the government's immunity from fees, not from interest on those fees. *See Shaw*, 478 U.S. at 319, 106

S.Ct. at 2964; *see also Perales,* 950 F.2d at 1076 ("The narrowest reasonable construction of the cost-of-living provision ... leads us to conclude that this was an attempt to allow the statute to be self-updating in light of the modern realities of inflation. This purpose is accomplished through the award of historic rates..."). Therefore, enhancements of the $75 statutory rate must be based on the "historic" cost-of-living.

Contrary to appellants' assertion, our prior case law on the issue before us today is neither "confusing" nor "unclear." Appellants' Br. at 14. In our first case addressing cost-of-living enhancements under the EAJA, *Massachusetts Fair Share v. Law Enforcement Assistance Admin.,* 776 F.2d 1066 (D.C.Cir.1985), we rejected a request for a ten percent fee enhancement, limiting it instead to five percent "because some of the work in this case was performed almost contemporaneously with the effective date of [the Act]." *Id.* at 1069. Because we decided *Massachusetts Fair Share* in 1985, four years after the EAJA's effective date, but still concluded that the petitioners there were "adequately compensated by the [1981] rate of $75 per hour," *id., Massachusetts Fair Share* is consistent with our conclusion that fee enhancements should be based on "historic" cost-of-living increases, not "current" increases. Decided on the same day as *Massachusetts Fair Share, Hirschey v. FERC,* 777 F.2d 1 (D.C.Cir.1985), allowed a fee enhancement to compensate for delay in payment beyond the date of services, but did so under the Act's "special factors" provision. *Id.* at 5 & n. 24.

Following *Massachusetts Fair Share, Hirschey,* and the Supreme Court's decision in *Shaw,* we decided *Wilkett v. ICC,* stating in a footnote that the no-interest rule in *Shaw* "does not bar a [cost-of-living adjustment] to the $75 per hour cap in this case, because section 2412(d)(2)(A) explicitly permits adjustments to the cap to compensate attorneys for 'increases in the cost of living.'" 844 F.2d 867, 874 n. 3 (D.C.Cir.1988) (quoting 28 U.S.C. § 2412(d)(2)(A)). As far as it goes, this statement is absolutely accurate—the no-interest rule does not bar cost-of-living adjustments to fees under the EAJA. *Wilk-*

*ett* simply did not face the issue before us today: the choice between "historic" cost-of-living enhancements, which do not violate the no-interest rule since they do not compensate for delay, and "current" enhancements, which we conclude do violate the rule. Indeed, later in the opinion, the *Wilkett* court recognized that it was "constrained" by *Massachusetts Fair Share* to calculate cost-of-living adjustments according to the year in which legal services were rendered. *Wilkett,* 844 F.2d at 875.

As in *Hirschey,* however, *Wilkett* went on to rely on the statute's "special factors" provision to award a fee enhancement as compensation for the unusual delay in resolving the fee petition. *Id.* at 876. In so ruling, *Wilkett* rejected the Government's argument that *Shaw* barred compensation for delay even as a special factor. *Id.* Concurring in the denial of rehearing, now-Chief Judge Edwards, author of the *Wilkett* opinion, explained that the court's "holding on this point [i.e., that *Shaw* does not bar a "special factor" enhancement for delay] is very limited. ... [E]specially when considered in light of the highly unusual facts that resulted in the delay in this case ... there will be few if any cases like *Wilkett* in the future." *Wilkett v. ICC,* 857 F.2d 793, 795 (D.C.Cir.1988); *but see id.* (Starr, J., dissenting from denial of rehearing) (awarding compensation for delay as a "special factor" "incompatible with the teachings of [*Shaw*]," because statute's "special factor" language did not waive government's immunity from interest); *Marcus,* 17 F.3d at 1039 (*Wilkett* makes an "end run around the no-interest rule ... because the statutory provision allowing for a higher fee ... is not the kind of express, unambiguous statutory language sufficient to waive sovereign immunity.").

Finally, in *Oklahoma Aerotronics, Inc. v. United States,* 943 F.2d 1344, 1352 (D.C.Cir. 1991), relied on by the district court in this case, we again allowed fee enhancement under the "special factors" provision because of an eight-year hiatus between filing of the fee application and the district court's decision. *Id.* at 1350. We reiterated that, in the absence of special factors, "[c]ost of living adjustments to the $75–per–hour cap are made from the statute's effective date to the point when the services are rendered." *Id.* at 1349 (citing *Wilkett,* 844 F.2d at 875).

## III

■ This brings us to appellants' argument that, as in *Hirschey, Wilkett,* and *Oklahoma Aerotronics,* they should receive an upward adjustment under the statute's "special factors" provision. 28 U.S.C. § 2412(d)(2)(A)(ii). In view of *Wilkett*'s holding that *Shaw* does not bar such enhancements, we review the district court's conclusion that no "special factors" warranted an enhancement, *Masonry Masters II,* slip op. at 5, for abuse of discretion. *See Oklahoma Aerotronics,* 943 F.2d at 1352. We find none.

Just over a year passed between Masonry Masters' filing of its first fee petition in late December 1990 (later supplemented in June 1991) and the district court's initial decision in January 1992, and part of that delay resulted from Masonry Masters' repeated requests for extensions of time to file a response to the INS's opposition. By comparison, in *Oklahoma Aerotronics, Wilkett,* and *Hirschey,* the delays between filing of fee petitions and their resolution were considerably longer, ranging from two to eight years. *Oklahoma Aerotronics,* 943 F.2d at 1350 (eight-year delay between filing of fee petition and court's decision); *Wilkett,* 844 F.2d at 877 (four-year delay between filing of fee petition and court's decision); *Hirschey,* 777 F.2d at 2–3 (two-year delay between filing of fee petition and court's decision). Much of the delay between the district court's 1992 order in this case and its final order of October 1994 resulted from the parties' disagreement over the proper cost-of-living enhancement, as well as Masonry Masters' need to file a more detailed affidavit supporting its supplemental fee request. Under these circumstances, the district court did not abuse its discretion in denying a "special factors" enhancement.

We affirm the decision of the district court.

*So ordered.*

KAREN LeCRAFT HENDERSON, Circuit Judge, concurring:

I concur in the panel opinion although I disagree with the proposition that a district court's determination whether to enhance an EAJA award for the "special factor" of delay should be reviewed for abuse of discretion. The Supreme Court has made it clear that an attorney's fee award cannot be increased for delay without an express statutory waiver of sovereign immunity from interest liability. *See Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). Because the EAJA lacks such a waiver, fees awarded under the statute can never be enhanced for delay as a matter of law. *Accord Oklahoma Aerotronics, Inc. v. United States,* 943 F.2d 1344, 1352–53 (D.C.Cir.1991) (Williams, J., concurring and dissenting); *Wilkett v. ICC,* 857 F.2d 793, 795 (D.C.Cir. 1988); (Starr, J., dissenting from denial of rehearing *en banc*); *Shultz v. Crowley,* 802 F.2d 498, 511–12 (D.C.Cir.1986) (MacKinnon, J., dissenting); *Marcus v. Shalala,* 17 F.3d 1033, 1039 (7th Cir.1994). Thus, given the freedom I would affirm the district court's decision on the ground that the EAJA does not authorize a delay enhancement. Nevertheless, circuit precedent holds otherwise, *see Wilkett v. ICC,* 844 F.2d 867 (D.C.Cir.), *rehearing denied,* 857 F.2d 793 (1988), and "[t]he law of this Circuit, whether in error or not, is binding absent correction by a higher court," *National Treasury Employees Union v. United States,* 990 F.2d 1271, 1286 n. 7 (D.C.Cir.1993) (Sentelle, J., dissenting) (citing *Save Our Cumberland Mountains, Inc. v. Hodel,* 826 F.2d 43, 49 (D.C.Cir.1987)); *cf. Oklahoma Aerotronics, Inc.,* 943 F.2d at 1353 (Williams, J., concurring and dissenting) ("The 'special factor' clause of § 2412(d)(2)(A)(ii) merely *releases* the $75 *cap* that it itself imposes on recovery of 'reasonable' fees. Since under *Shaw* compensation for delay does not even qualify as 'reasonable', it is hard to see how refinements in a clause that *limits* payment of reasonable fees can allow the applicant *more* compensation. *Wilkett* is, however, circuit law, ... [and] we must apply it as best we can.") (footnote omitted).