**In re: SEALED CASE 00–5116**

**Nos. 00–5116 and 00-5302.**

United States Court of Appeals,
District of Columbia Circuit.

Filed July 3, 2001.

Before EDWARDS, Chief Judge, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

In *In re Sealed Case*, we held that the Federal Election Commission (FEC) unquestionably violated its authorizing statute and its own regulations by placing information about an ongoing investigation in the public record as part of a subpoena enforcement action. 237 F.3d 657, 667 (D.C.Cir.2001). Now, Appellants in that case apply for fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. Appellants argue that they are entitled to attorney fees exceeding the $125 per hour typically provided under the Act. Appellants suggest that the higher fees are justified by special factors that limited the pool of available counsel. *See id.* § 2412(d)(2)(A). Specifically, they contend the pool was limited because the case required attorneys who specialize in federal election law, are experienced in federal litigation, and were familiar with the sealed administrative record. Appellants further suggest that the FEC's strident insistence on placing the information on the public record with less than 24 hours notice precluded them from looking for other counsel. Because these limitations

are not the type of "special factors" contemplated by the Act, *see F.J. Vollmer Co. v. Magaw*, 102 F.3d 591, 598 (D.C.Cir. 1996), we award Appellants the expenses for which they have applied and fees calculated at the standard EAJA rate.

## I. BACKGROUND

The FEC is investigating allegations that Appellants violated the Federal Election Campaign Act (FECA), 2 U.S.C. § 413 *et seq.* As part of the investigation, the FEC issued a subpoena to a third-party witness. When the third party did not comply with the subpoena, the FEC petitioned the district court to enforce it. The petition was filed on the public record and contained information about the ongoing investigation.

Appellants immediately filed an emergency motion to seal the case. In the motion, Appellants argued that the FEC's petition violates the broad confidentiality afforded to the subjects of FEC investigations under FECA. The district court denied Appellants' motion to seal, treating it "sort of as a TRO request." Transcript of Emergency Hearing at 12, *In re Sealed Case*, No. MISC. 00–162 (D.D.C. Mar. 17, 2000).

On appeal, we recognized that 2 U.S.C. § 437g(a)(12)(A) and 11 C.F.R. § 111.21(a) plainly state that "the Commission *shall not* place information about an ongoing investigation in the public record when it seeks to enforce a subpoena." *Sealed Case*, 237 F.3d at 667. We held that by publicly filing its petition and the accompanying exhibits, "the Commission unquestionably violate[d] Congress's mandate and its own regulations." *Id.* Accordingly, we reversed the district court's ruling. Appellants now apply for fees and expenses related to their effort to seal the FEC's subpoena enforcement action.

## II. ANALYSIS

Under the EAJA, we "award to a prevailing party" of qualifying size fees and expenses incurred by the party as part of an action against the United States unless "the position of the United States was substantially justified or . . . special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

The Commission concedes that Appellants are "prevailing parties." *See id.* § 2412(d)(1)(A), (2)(B). The Commission also wisely concedes that its position in the underlying case was not substantially justified. It could not have asserted otherwise with a straight face. Our earlier opinion highlighted the "weakness" of the Commission's position, a weakness that "invite[d] the suspicion that its actions [were] externally motivated." *Sealed Case,* 237 F.3d at 668.

The EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that . . . a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Appellants apply for fees for the three attorneys who represented them in their effort to seal the subpoena enforcement action. Each of the attorneys charges a different hourly rate, all of which exceed the $125 rate provided for in the statute. Appellants ask us to award the higher fees charged by counsel in light of several special factors that combined to narrow the pool of available counsel in this case. Specifically, they contend that the case required attorneys who specialize in federal election law, who have experience in federal litigation (particularly with respect to emergency remedies), and who were familiar with the administrative record in the ongoing FEC investigation. Additionally, Appellants claim that the higher fees are justified by the FEC's ham-handed insistence on making a public filing with little notice and its obstinate refusal to temporarily preserve Appellants' confidentiality. According to Appellants, the FEC's handling of this matter precluded any realistic chance to retain other counsel.

In *Pierce v. Underwood,* the Supreme Court explained that the EAJA's "limited availability" provision "must refer to attorneys 'qualified for the proceedings' in some specialized sense, rather than just in their general legal competence." 487 U.S. 552, 572, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). The Court held that the provision requires attorneys to possess "some distinctive knowledge or specialized skill needful for the litigation in question." *Id.* According to the Court, examples of this criterion are "an identifiable practice specialty such as patent law, or knowledge of foreign law or language." *Id.* Fee awards exceeding the statutory cap are permitted only "[w]here such qualifications are necessary and can be obtained only at rates in excess of the [$125] cap." *Id.* The *Underwood* Court emphasized that "the other 'special factors' envisioned by the exception must be such as are not of broad and general application." *Id.* at 573, 108 S.Ct. 2541.

Following *Underwood,* we noted that a higher fee would be appropriate for specialties "requiring technical or other education *outside* the field of American law." *Waterman S.S. Corp. v. Mar. Subsidy Bd.,* 901 F.2d 1119, 1124 (D.C.Cir.1990). In *F.J. Vollmer Co. v. Magaw,* we held that specialization in firearms law was not a special factor justifying higher fees under the EAJA. 102 F.3d 591, 598 (D.C.Cir. 1996). In that case, we stated that "lawyers practicing administrative law typically develop expertise in a particular regulated industry," but this expertise comes from experience, not from specialized training.

*Id.* "If expertise acquired through practice justified higher reimbursement rates, then all lawyers practicing administrative law in technical fields would be entitled to fee enhancements." *Id.* As we explained in *Vollmer*, nothing in the EAJA suggests this entitlement. *See id.* A number of our sister circuits have adopted a similar approach, refusing to award higher fees based on counsel's expertise in a particular subject. *See, e.g., Estate of Cervin v. Commissioner*, 200 F.3d 351, 354 (5th Cir. 2000); *Raines v. Shalala*, 44 F.3d 1355, 1361 (7th Cir.1995); *Stockton v. Shalala*, 36 F.3d 49, 50 (8th Cir.1994); *Chynoweth v. Sullivan*, 920 F.2d 648, 650 (10th Cir. 1990). *But see Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir.1991).

■ In light of *Vollmer*, we cannot award Appellants fees exceeding $125 simply because they wanted to hire attorneys who specialize in federal election law, have experience in federal litigation, and were familiar with the administrative record. Although federal election law "involves a complex statutory and regulatory framework, the field is not beyond the grasp of a competent practicing attorney with access to a law library and the other accoutrements of modern legal practice." *Chynoweth*, 920 F.2d at 650. Likewise, in all federal cases, clients presumably want to be represented by an attorney with experience in federal litigation and who is familiar with the record at issue. These are not special factors unique to this case. Rather, even in combination they broadly and generally apply to countless cases litigated in the federal courts. *See Underwood*, 487 U.S. at 573, 108 S.Ct. 2541.

■ Appellants suggest that this case is set apart from the typical one by the "artificial emergency" created by the FEC. Appellants contend that the FEC's actions placed unnecessary time constraints on them that effectively limited the availabili-ty of qualified attorneys who could handle this matter. As we recounted in our earlier opinion, on March 16, 2000, the FEC gave Appellants less than 24 hours notice that it planned to file a petition seeking to enforce a subpoena against a third-party witness and that the petition would include exhibits detailing information about the FEC's ongoing investigation of Appellants. *See Sealed Case*, 237 F.3d at 662. We neglected to note in that opinion, however, that the FEC provided this notice "just before close of business." While the FEC considered this a "courtesy" (presumably because no regulation required such notice), its etiquette only extended as far as informing Appellants that their statutorily protected confidentiality would be violated the next afternoon. Because of the Commission's manners, Appellants were forced to act immediately.

Within seconds of the FEC filing its petition, Appellants filed an emergency motion to seal the district court proceedings. A few hours later, Appellants' counsel advocated that motion before the district court at a hastily arranged hearing— a hearing that was held on a Friday at 5 pm. By the time the district court denied Appellants' motion, the work week was over. Fearing that confidential information would be revealed when the district court clerk's office reopened the following week, Appellants scrambled to appeal the district court's decision by Monday afternoon.

Undoubtedly, the FEC's actions forced Appellants into an atrocious position. To shield themselves from the very agency Congress requires to protect their confidentiality, Appellants essentially had no choice other than to turn to the attorneys on whom they had relied during the FEC's investigation. There simply appears to have been no time to research or retain other counsel. Still, this difficulty is not

the type of "special factor" or "limited availability" contemplated by the EAJA.

■ Because the Act is a waiver of sovereign immunity, we must construe it "strictly in favor of the sovereign." *Masonry Masters, Inc. v. Nelson,* 105 F.3d 708, 712 (D.C.Cir.1997). Under the EAJA, we award attorney fees if "the position of the United States" was not "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The Act mandates that those fees "shall not be awarded in excess of $125 per hour unless … a special factor … justifies a higher fee." *Id.* § 2412(d)(2)(A). The special factor inquiry is separate from the inquiry into whether the United States' position was justified. Appellants' proposed reading conflates the two by asking for higher fees in light of the FEC's actions and how those actions impacted them. For a party to receive *any* fee award under the Act, the government's position must not be substantially justified—it does not matter how unjustified that position is. Congress has not devised a system to penalize the United States for the degree of its unjustified position or how that unjustified position has impacted a prevailing party. Rather, its waiver of sovereign immunity assumes that the United States has taken an unreasonable position.

We agree with the FEC's concession that its position in this case was not substantially justified. Its contentious refusal to file its petition under seal was based on a surreal reading of FECA, references to opaque shards of legislative history, and an absurdist approach to its own regulations. *See Sealed Case,* 237 F.3d at 668–70. Indeed, the Commission seemed to have completely overlooked the bedrock principle that "[a]gencies are not empowered to carve out exceptions to statutory limits on their authority," an authority that flows directly from explicit congressional delegations. *Id.* at 669–70. To say that

the Commission's position was not substantially justified is an understatement. It was not justified at all. *See id.* at 668. Nevertheless, this simply reflects the threshold inquiry required for Appellants to receive any fee award, not a reason to increase that award beyond the otherwise applicable $125 rate. It does not matter that the Commission's wholly unjustified actions may have forced Appellants to retain counsel who charge more than the statutorily provided fee. Instead, because the Commission's position was wholly unjustified, the EAJA's waiver of sovereign immunity authorizes us to award Appellants attorney fees based on a rate of $125 per hour. Accordingly, this rate forms the basis of Appellants' award.

Appellants ask us to award fees based on the time their counsel spent preparing supplemental and reply briefs for their fee application. These briefs were primarily devoted to arguing that Appellants should receive higher fees based on their interpretation of the EAJA's "special factor" provision. We do not award fees for Appellants' preparation of these briefs. As we discussed above, Appellants' argument for higher fees flies in the face of the clear precedent of this Court. The United States is not required to pay "for work that could have been avoided." *Action on Smoking & Health v. Civil Aeronautics Bd.,* 724 F.2d 211, 224 (D.C.Cir.1984). Additionally, Appellants did not prevail on this question. *See Cooper v. United States R.R. Retirement Bd.,* 24 F.3d 1414, 1417 (D.C.Cir.1994).

The Commission raises several arguments concerning specific entries and costs in Appellants' application. We have considered these arguments and find them meritless.

## III. CONCLUSION

According to Appellants' application, their attorneys spent 231.5 hours working

on this case (excluding time spent on the supplemental and reply briefs in this proceeding), and they incurred $3,920.80 in expenses (the $4,095.33 listed in the initial petition, less the amounts conceded in the reply brief). Based on the EAJA's $125 per hour rate, Appellants are entitled to $32,858.30 in fees and expenses.

*So ordered.*